

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NOS. 02-11-00200-CR
### 02-11-00201-CR
### 02-11-00202-CR

EX PARTE JOHN RAYBON

----------

## FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant John Raybon was charged with the felony offenses of obstruction or retaliation, unlawful carrying of a weapon on a licensed premise, and attempted aggravated assault. The trial court set pre-trial bail at $100,000, $10,000, and $50,000, respectively, for a total bail amount of $160,000. Raybon filed a pre-trial application for writ of habeas corpus in each case, seeking a

---

[1]*See* Tex. R. App. P. 47.4.

reduction of the bail amount. *See* Tex. Code Crim. Proc. art. 11.24 (West 2005). The trial court denied relief, and Raybon appealed. *See* Tex. R. App. P. 31. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

At the hearing on Raybon's application for writ of habeas corpus, Kevin Taylor testified that he is the manager of an AT&T store in Wichita Falls. He testified that Raybon had brought his laptop into the store for repairs and that Taylor had dropped it, causing a dent in the laptop. At some point during that visit, Raybon told Taylor that he always carries a gun and that he needed to use it on his wife, who was divorcing him. Following company policy, Taylor reported the damage to the company's claims department, at which point, according to Taylor, "it was out of our hands." Raybon began calling the store about the damage to his laptop, often using an abrasive and demanding tone, cursing, and yelling. He left Taylor voice messages threatening to "take it to the media" and to "take it how ever far he needed to take it." Taylor testified that Raybon used "veiled threats" but that he never directly threatened to hurt or kill Taylor.

Based on Raybon's threatening behavior, Taylor hired an off-duty police officer as security for the store during business hours. One day, Raybon went to the store to have his cell phones repaired. The store had banned Raybon as a customer based on past dealings with him, so the off-duty officer escorted him outside. Once outside, Raybon "gestured to reach for [a gun]" as Taylor watched from inside the store. Taylor did not see the gun, but he later learned that

2

Raybon was carrying a gun in the area that he had reached toward. Taylor testified that he is "[a]bsolutely" concerned for his own safety if Raybon's bail is reduced.

Jake Bussey, who works at Cellular World, testified that Raybon went to Bussey's store to get his two cell phones fixed and, while there, told Bussey that the situation with his phones was "all because of [Taylor]." Raybon had taken a photograph of Taylor and showed it to Bussey.

The State introduced in evidence Raybon's prior criminal history, which includes five arrests and two convictions for battery/domestic violence between 1997 and 2009, and a protective order from Oklahoma based on harassing and threatening telephone communication. Raybon testified briefly about the protective order; he said that it stemmed from an argument over a haircut. He admitted that after the protective order was filed, he purchased a gun.

The trial court took judicial notice of the probable cause affidavit for each case. The probable cause affidavit for the attempted aggravated assault charge states that, on January 8, 2011, Raybon went to the AT&T store and threatened Taylor by stating, "I'll get my tech 9 and come back and take care of this."[2] The affidavit stated that, on January 28, 2011, Raybon returned to the store and was escorted outside by an off-duty police officer who had been hired as security at the store because of Raybon. The off-duty officer saw the butt of a handgun in

---

[2]Taylor testified that Raybon never made this comment and that Taylor never told an officer that Raybon made that comment.

Raybon's jacket pocket. The officer reached for the gun, and Raybon pulled away, stating, "I have a gun." He appeared to be reaching for the gun. Another officer arrived on the scene and helped control Raybon. The officers found a loaded 9mm handgun on Raybon.

The probable cause affidavit for the obstruction or retaliation charge states that after Raybon was arrested in front of the AT&T store with a gun in his possession, the store disconnected his cellular service. Subsequently, on January 31, 2011, Raybon called Lane Atkin, an employee at the AT&T store; Raybon was very upset that his cellular service had been disconnected. Atkin explained that the store no longer wished to do business with him, and Raybon told Atkin, "I'm going to the police department to get my gun back, then I'm going to make a move to destroy your life."

The probable cause affidavit for the unlawful carrying of weapons on a licensed premise charge states that, on February 4, 2011, Raybon was arrested at a Fast Eddy's under a warrant for making a terroristic threat. The arresting officer found a switchblade knife in Raybon's jacket pocket.

After hearing all of the testimony and reviewing Raybon's criminal record and the probable cause affidavits, the trial court denied the application for writ of habeas corpus. The trial court explained that Raybon has "a great deal of pent-up anger" and that, for the safety of the victims and the public in general, the bail amount should not be lowered.

4

## III. STANDARD OF REVIEW

We review the trial court's ruling on the setting of bail under an abuse of discretion standard of review. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981); *Ex parte Scott*, 122 S.W.3d 866, 868 (Tex. App.— Fort Worth 2003, no pet.); *see also* Tex. Code Crim. Proc. Ann. art. 17.15 (West 2005) (giving trial court discretion to set bail amount).

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the trial court's action was arbitrary or unreasonable. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.*

## IV. BAIL REDUCTION

The primary purpose of a bail bond is to secure the presence of the defendant at trial on the offense charged. *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Scott*, 122 S.W.3d at 868. Accordingly, bail should be set high enough to give reasonable assurance that the defendant will appear at trial, but it should not operate as an instrument of oppression. *Scott*, 122 S.W.3d at 868.

Article 17.15 of the Texas Code of Criminal Procedure sets forth the following criteria for establishing the amount of bail:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15.

In addition to these factors, the court should also weigh the following factors in determining the amount of the bail: (1) the accused's work record; (2) the accused's family ties; (3) the accused's length of residency; (4) the accused's prior criminal record, if any; (5) the accused's conformity with the conditions of any previous bond; (6) the existence of outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. *Rubac*, 611 S.W.2d at 849–50; *Scott*, 122 S.W.3d at 869. The defendant bears the burden to show that he is entitled to a reduction in bail. *Rubac*, 611 S.W.2d at 849; *Maldonado v. State*, 999 S.W.2d 91, 97 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

## A. The Nature of the Offenses and the Potential Sentences

The nature of the offenses and the circumstances surrounding the offenses are primary factors in determining what constitutes a reasonable bond.

6

*See* Tex. Code Crim. Proc. Ann. art. 17.15(3); *Ex parte Davila*, 623 S.W.2d 408, 410 (Tex. Crim. App. [Panel Op.] 1981). In considering the nature of the offenses, it is proper to consider the possible punishments. *Vasquez*, 558 S.W.2d at 479–80; *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pet. ref'd). When the nature of the offense is serious and involves aggravating factors, a lengthy prison sentence following trial is probable. *Scott*, 122 S.W.3d at 869. Therefore, pretrial bond must be set sufficiently high to secure the presence of the accused at trial because the accused's reaction to the prospect of a lengthy sentence might be to not appear. *Id.*

Here, Raybon is charged with three third-degree felonies. *See* Tex. Penal Code Ann. §§ 22.02(b), 36.06(c), 46.02(c) (West 2011); *see also id.* § 15.01(d) (West 2011)*.* He faces a punishment of two to ten years for each offense. *See id.* § 12.34 (West 2011). As we have detailed above, the circumstances of the offenses, including the threats to the safety of the AT&T store's employees, are quite serious.

## B. Ability to Make Bail

The accused's ability to make bail is merely one factor to be considered in determining the appropriate amount of bail. *See* Tex. Code Crim. Proc. Ann. art. 17.15(4); *Scott*, 122 S.W.3d at 870. Simply because a defendant cannot meet the bail set by the trial court does not automatically render it excessive. *Scott*, 122 S.W.3d at 870. "If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and

7

the accused would be in the unique posture of determining what his bond should be." *Id.*

The record shows that the trial court declared Raybon indigent and appointed counsel to represent him. Raybon testified that he is going through a divorce and that he is in the middle of a bankruptcy. According to Raybon, he and his wife have "a couple of TVs, a new bed," but everything else was sold to cover the cost of the bankruptcy. He had purchased a Las Vegas home for $360,000, but at the time of the hearing, it was in foreclosure. Raybon said that he has approximately $800 in a bank account and that he had recently purchased a car for $500 that he could sell, although he needs it to get to court.

Raybon did not specify, either in his motion or at the hearing, an amount of bail that he would be able to pay, nor did he present any evidence about whether his family has any ability to help him make bail. *See Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("To show that he is unable to make bail, a defendant generally must show that his funds and his family's funds have been exhausted."). He did not explain what efforts, if any, were made to make the $160,000 bail. *See id.* (finding no abuse of discretion absent, among other things, evidence of defendant's and his family's assets and attempts to make bond).

## C. Safety of the Victim and the Community

Regarding the safety of the victim and the community, Taylor explained that he is concerned for his own safety if Raybon makes bail. Taylor explained, "I

8

don't have a doubt in my mind that he would come after me in some sense." The probable cause affidavit for obstruction or retaliation states that Akin feels that Raybon is dangerous and has the means to carry out the threats he made. According to the affidavit, Akin fears imminent serious bodily injury and death for himself and other employees of his business.

### D. Community and Family Ties

Raybon testified that he grew up near Wichita Falls in Burkburnett. At some point, he moved to Nevada, where he lived for at least fourteen years; he briefly returned to Burkburnett before moving with his wife to Durant, Oklahoma for several months in 2009. He returned to Burkburnett in 2009. His son, four grandchildren, aunt, and uncle live in Wichita County. When asked where he would live locally, he said he was "thinking very seriously that [his] uncle would let [him] stay at his place." However, Raybon admitted that he had spoken with his uncle several times while in jail and had not yet asked if he could live with him.

### E. Prior Convictions

Raybon's criminal history includes five arrests and two convictions for battery/domestic violence between 1997 and 2009, as well as a protective order from Oklahoma based on harassing and threatening telephone communication. The trial court was permitted to take this history into consideration. *See Rubac*, 611 S.W.2d at 849–50.

9

## F. No Abuse of Discretion

Affording due deference to the trial court's ruling and considering the nature of the offenses, Raybon's history of violence, and the safety of the victims and the community, we hold that Raybon has failed to demonstrate that the bail amounts are excessive or that the trial court abused its discretion by refusing to lower the bail amounts. *See Rubac*, 611 S.W.2d at 850; *Scott*, 122 S.W.3d at 868.

## V. CONCLUSION

Having determined that the trial court did not abuse its discretion, we affirm the trial court's orders denying his applications for writs of habeas corpus.

PER CURIAM

PANEL: WALKER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 4, 2011