Ex Parte Vernon R. Scott

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-325-CR

EX PARTE 

VERNON R. SCOTT 

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

OPINION

------------

I. Introduction 

This is an appeal from the denial of habeas corpus relief requesting bond reduction.  In three points, Appellant Vernon R. Scott (“Scott”) contends that the trial court erred by denying a reduction in the amount of his bond because the bond is excessively and oppressively high in violation of the Eighth and Fourteenth Amendments to the United States Constitution; article I, sections 11 and 13 of the Texas Constitution; and article 17.15 of the Texas Code of Criminal Procedure.  We will affirm.

II.  Factual and Procedural Background

In May 2003, Scott was arrested for kidnapping his wife, Jennifer Davis (“Davis”).  The magistrate set bond at $100,000.  Thereafter, Scott filed an application for writ of habeas corpus, asserting that the bond was excessive and requesting a reduction in the amount of the bond.  Scott was subsequently indicted on one count of kidnapping and one count of aggravated kidnapping.  On July 30, 2003, the trial court held a hearing on Scott’s habeas application requesting bond reduction and denied the requested relief.  This appeal followed.

III.  Excessive Bond

In three points, Scott contends that the trial court erred by denying his request for bond reduction because $100,000 is an excessive amount.  He complains that the amount of the bond violates his right to reasonable bond under the Eighth and Fourteenth Amendments to the United States Constitution; article I, sections 11 and 13 of the Texas Constitution; and article 17.15 of the Texas Code of Criminal Procedure.  The State maintains that the trial court did not err by denying his request because Scott failed to carry his burden to show that the amount of the bond was excessive.  Scott’s brief combines the argument for his three points, and we will likewise combine our analysis.

A.  Standard of Review

We review the trial court’s denial of a bond-reduction request under an abuse of discretion standard.  
See Ex parte Rubac
, 611 S.W.2d 848, 850 
 (Tex. Crim. App. [Panel Op.] 1981); 
Ex parte Brown
, 959 S.W.2d 369, 372 (Tex. App.—Fort Worth 1998, no pet.); 
see also 
Tex. Code Crim. Proc. Ann.
 art. 17.15 (Vernon Supp. 2004) (giving trial court discretion to set amount of bond).  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. 
Montgomery v. State
,
 
810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Id
. 

The primary purpose of an appearance bond is to secure the presence of the defendant at trial on the offense charged.  
Ex parte Vasquez
, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977).  Accordingly, bail should be set high enough to give reasonable assurance that the defendant will appear at trial, but 
it should not operate as an instrument of oppression.  
Id
.
  
In a habeas proceeding, the burden of proof is on the defendant to show that the bail, as set, is excessive.  
Rubac
, 611 S.W.2d at 849.

Article 17.15 of the Texas Code of Criminal Procedure sets forth the following criteria for establishing a defendant’s bond:

1.  The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2.  The power to require bail is not to be so used as to make it an instrument of oppression.

3.  The nature of the offense and the circumstances under which it was committed are to be considered.

4.  The ability to make bail is to be regarded, and proof may be taken upon this point.

5.  The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann.
 art. 17.15.  In addition to these factors, the court should also weigh the following factors in determining the amount of the bond:  (1) the accused’s work record; (2) the accused’s family ties; (3) the accused’s length of residency; (4) the accused’s prior criminal record, if any; (5) the accused’s conformity with the conditions of any previous bond; (6) the existence of outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense.  
Rubac
, 611 S.W.2d at 849-50; 
Brown
, 959 S.W.2d at 372.  

B.  The Nature and Circumstances of the Offense

The nature of the offense and the circumstances surrounding the offense are primary factors in determining what constitutes reasonable bond.  
Tex. Code Crim. Proc. Ann.
 art. 17.15(3); 
see Ex parte Davila
, 623 S.W.2d 408, 410 (Tex. Crim. App. [Panel Op.] 1981).  In considering the nature of the offense, it is proper to consider the possible punishment.  
Vasquez
, 558 S.W.2d at 479-80.  When the nature of the offense is serious and involves aggravating factors, a lengthy prison sentence following trial is probable.  
In re Hulin
, 31 S.W.3d 754, 760 (Tex. App.—Houston [1
st
 Dist.] 2000, no pet.).  Therefore, pretrial bond must be set sufficiently high to secure the presence of the accused at trial because the accused’s reaction to the prospect of a lengthy sentence might be to not appear.  
Id
. at 761.

Scott is charged with aggravated kidnapping, a first degree felony.  
Tex. Penal Code Ann.
 § 20.04(c) (Vernon 2003).  If convicted, Scott faces a potential punishment range of life imprisonment or any term of imprisonment between five and ninety-nine years, and a fine of up to $10,000.  
See id
. § 12.32.  However, if, at the punishment phase of trial, Scott proves by a preponderance of the evidence that he voluntarily released the victim in a safe place, the offense is reduced to a second degree felony.  
Id
. § 20.04(d).  The available punishment for a second degree felony ranges from two to twenty years imprisonment, and a fine of up to $10,000.  
See id
. § 12.33.  Scott is potentially eligible for probation because he has no prior felony convictions.  
See 
Tex. Code Crim. Proc. Ann.
 art. 42.12 § 4(e).

Although the circumstances surrounding the offense 
were not developed at the habeas hearing, after hearing argument from both sides, the trial court expressed concern regarding any potential bond reduction because of the “personal” nature of the case.  Moreover, the indictment charges Scott with intentionally or knowingly abducting Davis by restraining her with the intent to prevent liberation by using or threatening to use deadly force.  The indictment further indicates that Scott used or exhibited a deadly weapon—a firearm—during the commission of the offense.  Given the serious nature of aggravated kidnapping, the use or exhibition of a deadly weapon, and the potential for a lengthy sentence, the trial court properly could have concluded that the bond was reasonable. 

C.  Ability to Make Bond

Scott requests that his bond be reduced to an amount not exceeding $25,000.  The State contends that the evidence regarding what bond Scott can afford is insufficient to justify bond reduction.

The accused’s ability to make bond is merely one factor to be considered in determining the appropriate amount of bond.  
Tex. Code Crim. Proc. Ann.
 art. 17.15(4); 
Brown
, 959 S.W.2d at 372.  Simply because a defendant cannot meet the bond set by the trial court does not automatically render the bond excessive.  
Id
.  “If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be.  
Ex parte Miller
, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref’d).

At trial, Scott testified that he and his family lacked sufficient assets or financial resources to post the $100,000 bond, but he did not detail either his or his family’s specific assets and financial resources, nor did he explain what efforts, if any, were made to furnish the bond.  
See Balawajder v. State
, 759 S.W.2d 504, 506 (Tex. App.—Fort Worth 1988, pet. ref’d) (noting that vague references to inability to make bond do not justify a reduction in the amount set);
 Miller
, 631 S.W.2d at 827
 (recognizing that it is incumbent on the accused to show that he has made an effort to furnish bond in amount set). Scott indicated that he believed his family could raise the bond fee if the bond were lowered to $25,000.  He testified that prior to his arrest he was working as a forklift operator and he would be able to return to his job if he were released on bond.  However, Scott presented no other witnesses or evidence regarding his ability to make bond.

D.  Safety of the Victim

In determining the appropriate amount of bond, the future safety of the victim of the alleged offense is to be considered.  
Tex. Code Crim. Proc. Ann.
 art. 17.15(5); 
Ex parte Beard
, 92 S.W.3d 566, 568 (Tex. App.—Austin 2002, pet. ref’d).  At trial, Scott assured the court that he would not attempt to contact or to go near his wife if he were released on bond.  Additionally, he agreed to abide by any conditions that the court might order if he were released, including wearing an electronic monitor.  The State, however, opposed a bond reduction because Davis feared for her safety if Scott were released.  The State indicated that Davis was receiving counseling to be able to testify against Scott at the trial on the merits, but she was too afraid to testify or even appear at the habeas proceeding.  The State also noted that Davis was still living and working in the area and expressed concern that electronic monitoring would not deter Scott from going near Davis.  The record reveals that the trial court was also concerned for Davis’s safety if Scott were released on bond.
(footnote: 1)  

E.  Community Ties

Courts may also consider an accused's work record, family ties, and length of residency to determine what constitutes reasonable bond.  
See Rubac
, 611 S.W.2d at 849.  Scott presented little evidence concerning his ties to the community.  As previously indicated, Scott testified that he was employed as a forklift operator prior to his arrest, but he never said how long he had been  employed at his job.  He mentioned that he had two kids, ages eighteen and twenty, and that he was paying child support for the youngest one at the time of his arrest; however, he did not indicate where his children lived or the status of his relationship with them.  Scott also mentioned his mother, but likewise never indicated where she lived or the status of his relationship with her.  Based on the lack of evidence regarding Scott’s ties to the community, the trial court could have concluded that Scott’s community ties were insufficient to assure his appearance at trial.  
See, e.g.
, 
Brown
, 959 S.W.2d at 373.

IV.  Conclusion
 

Affording due deference to the trial court’s ruling, we cannot say that the trial court acted arbitrarily or unreasonably by denying a reduction in the amount of Scott’s bond.  Although the bond is high, Scott has failed to demonstrate that the bond set is excessive.  
See id.
 (affirming denial of reduction of $500,000 pretrial bond in capital murder case).  Based on the nature and circumstances of the offense, concerns regarding the safety of the victim, the absence of evidence regarding Scott’s community ties, and his ability to make bond, the trial court could have properly concluded that Scott’s bond of $100,000 was reasonable.  Because we hold that the trial court did not abuse its discretion in denying Scott’s request for bond reduction, we overrule Scott’s three points.  W
e therefore affirm the order denying habeas corpus relief.  

SUE WALKER

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

PUBLISH

DELIVERED:  November 20, 2003

FOOTNOTES
1:
In denying Scott’s request, the court stated,”[M]y concern, as you well know -- you’d have to know this -- is that because of the nature of the case.  If I let you out and anything happens -- and I know you’re telling me right now, through your attorney, that nothing is going to happen.  But if it did happen, it would be on my head, and I’m not going to do that.”