Opinion issued May 6, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-01040-CR

———————————

Wallace C. Ledet, IV, Appellant

V.

State of
Texas, Appellee



 



 

On Appeal from the 239th District Court

Brazoria County, Texas



Trial Court Case No. 59374

 



 

MEMORANDUM OPINION

          Appellant,
Wallace C. Ledet, IV, challenges the trial court’s order setting his bail at
$250,000 pending his trial for the offense of aggravated kidnapping.[1]  In his sole point of error, appellant
contends that the trial court abused its discretion in setting his bail at
$250,000, and he asks this Court to set bail “in the amount of $75,000 or
another amount not to exceed $100,000.”

          We
affirm.  

Background

          A
Brazoria County grand jury issued a true bill of indictment, accusing appellant
of committing the offense of aggravated kidnapping.  The complainant, Susana DeJesus, was abducted
from a shopping center parking lot on February 2, 2009, in Pearland, Texas.  The complainant was subsequently shot and
killed. The indictment against appellant included allegations that he used or
exhibited a deadly weapon during the commission of the offense.  The trial court originally set appellant’s bail
at $500,000.  

Appellant filed a motion to reduce
his bail.  At the hearing on his motion,
Wallace Ledet Sr., appellant’s father, testified that, prior to 2002, he, his
wife, appellant, and appellant’s younger sister lived in Louisiana and Ohio.  In 2002, the family moved to Baytown, Texas, where
appellant graduated from high school.  In
2004, the family moved to Pearland, where the family lived at the time of the alleged
offense.  Ledet Sr. worked as a business manager
and his wife worked as an insurance agent. 
Appellant had previously worked with Ledet Sr. as a maintenance helper
but was not employed at the time of his arrest. 


Ledet Sr. asked the trial court to
release appellant on a lower bond to help his family and appellant
“financially” because the family had “pretty much exhausted” their ability to
assist appellant “in legal representation.” 
Ledet Sr. wanted appellant to enter the workforce and “be responsible”
until trial, and he agreed to supervise appellant and ensure that he made all
court appearances and met all reporting requirements.  Ledet Sr. noted that appellant was “always
welcome” at the family’s house, but agreed that appellant had been staying “at
some friends’ houses” at the time of the alleged offense.  Ledet Sr. had originally called one bonding
company, but he had not talked to anyone recently and could not assist
appellant in posting a bond if bail was set in the amount of $500,000.   Ledet Sr. listed his family’s assets and
liabilities, and he explained that appellant, who was twenty-five years old,
had no money and had possibly been selling scrap metal and pawning personal
possessions for money at the time of his arrest.  

           At the end of the hearing, the trial court
admitted into evidence the probable cause affidavit of Brazoria County
Sherriff’s Deputy Rogers.  In his
affidavit, Rogers testified that on February 2, 2009, the Brazoria County
Sherriff’s Office was notified that the complainant had been abducted at gunpoint
from a business in Pearland.  On March 9,
2009, Nicholas Michael Edwin Jean was arrested in connection with the
complainant’s abduction, and Rogers was “directed to” appellant. During a subsequent
non-custodial interview with another deputy, appellant admitted to “participation”
in the abduction and stated that on February 2, 2009, as he drove his truck
with Jean as a passenger, Jean told him to pull into a parking lot near a black
Cadillac and Jean produced a pistol from a bag. 
As two women walked through the parking lot, Jean exited the truck and
approached the women.  Appellant then heard
Jean order one of the women (later identified as the complainant) into the
Cadillac, and appellant “left the area.”

The trial court also admitted into
evidence a copy of the true bill of indictment, in which a Brazoria County
grand jury accused Jean of the offense of capital murder of the complainant by shooting
her with a firearm in the course of committing or attempting to commit the
robbery and/or kidnapping of the complainant. 
 

Following the hearing, appellant
requested that bail be set in the amount of $75,000.  The trial court reduced appellant’s bail
amount to $300,000.

Appellant subsequently filed an
application for writ of habeas corpus, seeking a bail reduction and arguing
that the $300,000 bail was excessive and oppressive.  At the hearing on his application, appellant
testified that he was twenty-six years old, he had been in custody for 250
days, and he had previously moved around Louisiana to Ohio to Texas between the
ages of 16 and 20 due to his father’s employment.  Appellant had moved to Baytown when he was
nineteen or twenty years old and graduated from high school in Baytown.  He had worked for his father’s company in
Baytown for nine months after graduation, attended two semesters at a local
community college, worked catering at a local resort while he was going to
school, and lived with his family in Pearland for five years.  

          Appellant
stated that he had no savings, money, or credit cards, but he did have a truck
on which he owed $8,000.  Appellant
admitted to having received deferred adjudication for two separate misdemeanor
offenses of possession of marijuana, but he noted that he had successfully
completed community supervision for the offenses, posted bond in both cases,
and attended all court hearings and not forfeited the bonds.  Appellant agreed that he was not employed at
the time of his arrest for aggravated kidnapping and had been unemployed for two
months.  Appellant had instructed his
attorney to call two bonding companies, and had learned through these
communications that he could not post the $300,000 bond.  

          On
cross-examination, appellant discussed his parents’ assets, and his testimony
was generally consistent with the testimony provided by his father at the previous
hearing.  Appellant stated he had not
spoken with his father about whether he had contacted a bondsman.  Appellant also stated that he believed
posting a bond should be his responsibility and he wanted the trial court to
consider his financial situation, not his parents’, in setting a bail amount.  During the hearing, the trial court admitted
into evidence the record and exhibits from the prior bail reduction
hearing.  At the end of the hearing, the
trial court granted appellant’s application and reduced his bond to $250,000
with certain conditions.

Amount of Bail

In his sole point of error,
appellant argues that the trial court abused its discretion in setting bail at
$250,000 because a $75,000 bond is “more than adequate to secure his presence
at trial, he had successfully complied with bond requirements before, and the
State did not present a prima facie case that he committed a crime.  He asks this Court to set bail “in the amount
of $75,000 or another amount not to exceed $100,000.”

We review a trial court’s setting
of bail for an abuse of discretion. See
Ex parte Rubac, 611 S.W.2d 848, 850 (Tex. Crim. App. 1981); Ex parte Ruiz, 129 S.W.3d 751, 753 (Tex.
App.—Houston [1st Dist.] 2004, no
pet.).  A trial court should consider the
following factors in setting a defendant’s bail:

1.     The bail shall be
sufficiently high to give reasonable assurance that the undertaking will be
complied with.

 

2.     The power to require bail is
not to be so used as to make it an instrument of oppression.

 

3.     The nature of the offense
and the circumstances under which it was committed are to be considered.

 

4.     The ability to make bail is
to be regarded, and proof may be taken upon this point.

 

5.     The future safety of a
victim of the alleged offense and the community shall be considered.

 

Tex. Code Crim. Proc. Ann. art. 17.15
(Vernon 2005).

The primary purpose for setting
bail is to secure the presence of the defendant in court at his trial.  Ex parte
Vasquez, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); Cooley v. State, 232 S.W.3d 228, 234 (Tex. App.—Houston [1st Dist.] 2007, no pet).  The amount of bail should be set sufficiently
high to give reasonable assurance that the accused will comply with the
undertaking, but should not be set so high as to be an instrument of oppression.  Ex
parte Bufkin, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977); Cooley, 232 S.W.3d at 234.  Courts should also consider the defendant’s
work record, family and community ties, length of residency, and past criminal
record.  See Rubac, 611 S.W.2d at 849; see
also Cooley, 232 S.W.3d at 234 (“Courts should also consider the
defendant’s work record, family ties, residency, criminal record, conformity
with previous bond conditions and aggravating factors involved in the offense.”).
 The ability to make bail, alone, does
not control the amount of bail.  Ex parte Charlesworth, 600 S.W.2d 316,
317 (Tex. Crim. App. 1980); see also
Milner v. State, 263 S.W.3d 146, 149–50 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  A defendant has the burden to demonstrate that
bail is excessive.  See Rubac, 611 S.W.2d at 849.

With these general principles in
mind, we address the pertinent factors.

 

Nature of the Offense

          The primary
factors to be considered in determining what constitutes reasonable bail are
the punishment that can be imposed and the nature of the offense.  Rubac,
611 S.W.2d at 849.  “Where the nature of
the offense is serious and involves aggravating factors, the likelihood of a
lengthy prison sentence following trial is great.”  In re
Hulin, 31 S.W.3d 754, 760 (Tex. App.—Houston [1st Dist.] 2000, no
pet.).  Bond in such cases should be set
sufficiently high to secure the defendant’s presence at trial because his “reaction
to the prospect of a lengthy prison sentence might be not to appear.”  Id.
at 761; see also Ex parte Scott, 122
S.W.3d 866, 869–70 (Tex. App.—Fort Worth 2003, no pet.).

Appellant stands accused of
committing the offense of aggravated kidnapping, a first degree felony
punishable by a term of imprisonment for life or for any term of not more than
99 years or less than 5 years and a fine not to exceed $10,000.  See Texas Penal
Code Ann. § 12.32 (Vernon Supp. 2009), § 20.04 (Vernon 2003).  Appellant asserts that the “record
development . . . does not even establish an offense by appellant.”  Appellant suggests that the record merely
shows that “appellant fled the area in an attempt to get away from any crime
taking place.”   

However, Deputy Rogers, in his probable cause affidavit,
which was admitted into evidence during both the hearing on appellant’s motion
for bail reduction and the hearing on appellant’s application for writ of
habeas corpus, testified that appellant, during a noncustodial interview, admitted to “participation” in the
complainant’s abduction.  During this
interview, appellant explained that he drove Jean into a parking lot near a
black Cadillac and Jean produced a pistol from a bag, exited appellant’s truck,
approached a woman later identified as the complainant, and ordered her into
the Cadillac.  In a true bill of
indictment, which was also introduced into evidence, a Brazoria County grand
jury accused Jean of subsequently murdering the complainant by shooting her
with a firearm.  

Given the serious nature of the offense
of aggravated kidnapping, the allegation of the use and exhibition of a deadly
weapon, and the potential for a lengthy sentence, the trial court could have reasonably
concluded that bail of $250,000 is appropriate.  See Ex parte Scott, 122
S.W.3d at 869–70 (noting “serious nature of aggravated kidnapping” and
affirming $100,000 bond); see also Milner,
263 S.W.3d at 149–50 (noting serious
nature of crimes of murder and attempted murder and substantial penalty if
convicted, and affirming bond of $500,000); Cooley, 232 S.W.3d at 234 (noting that charged offenses of
solicitation of capital murder were “serious, carrying substantial penalties,”
and affirming bond of $750,000 for three solicitation charges). 

 

 

Ability to Make Bond

We note that an accused’s ability
to make bond is “merely one factor to be considered in determining the
appropriate amount of bond.”   Ex parte Scott, 122 S.W.3d at 870
(citing Tex. Code Crim. Proc. Ann.
art. 17.15(4)).  Thus, even accepting
that appellant established that he would not be able to post bond, such a
showing would not control over the other factors.  Id.


Community Ties

Appellant testified that he had
moved to Texas when he was nineteen or twenty years old and graduated from high
school in Baytown after attending there for one year.  Appellant’s only testimony about his work
history was that, after graduation, he had worked for his father’s company in
Baytown for nine months and had subsequently worked catering at a local resort
while he went to community college for two semesters.  He admitted that he was unemployed at the
time of his arrest and had been unemployed for two months.  Also, the trial court could have reasonably concluded,
based upon appellant’s testimony, that he had been unemployed for significant
periods of time since his graduation.  Although
appellant stated that he had lived with his family in Pearland for five years, he
did not address his father’s testimony that he had been living with
unidentified friends at the time of the alleged aggravated kidnapping, and he provided
no testimony concerning any other community ties.  Appellant presented no testimony other than
his own.  There is also no evidence that,
at the time of the hearing, appellant would still be allowed to live with his
parents or that appellant had any means or resources to obtain shelter on his
own.  

At the hearing on appellant’s
motion for bail reduction, Ledet Sr. testified that appellant was “welcome” at
his house, but also stated that appellant had been staying at the houses of unidentified
friends.   Ledet Sr. did not elaborate or explain the
amount of time appellant had actually been spending at home at the time of allegedly
committing the offense.  Ledet Sr. did
not identify appellant’s friends with whom appellant had been staying or where
these friends lived.  Appellant admitted
that he had no financial resources, and Ledet Sr. stated that appellant had
been pawning his possessions for money at the time of his arrest.   Thus, the trial court could have reasonably
concluded that appellant lacked any significant community ties to assure his
appearance at trial.  See id. 


Other Considerations

          Appellant
presented evidence that he had previously complied with the conditions of bail in
his two possession of marijuana cases, he had appeared in court at all required
times in these cases, and he had successfully completed community supervision.  Appellant notes that these conditions are
“generally more stringent than bond conditions.”  Such evidence could weigh in favor of bail
reduction.  However, the offense of
aggravated kidnapping carries a much more significant punishment than that for
misdemeanor marijuana possession. 
Moreover, as discussed above, an “accused’s reaction to the prospect of
a lengthy prison sentence might be not to appear.”  Ex
Parte Scott, 122 S.W.3d at 869.

In regard to the safety of the
victim and the community, the record before us establishes that the complainant
was killed after the alleged kidnapping, and there is no evidence that any
other specific victim is still at risk.  Here,
however, the trial court was allowed to consider the violence alleged in the
instant case when taking into consideration the safety of the community.  

Finally, the record shows that,
prior to the instant case, appellant had committed two prior criminal
offenses.  Although appellant emphasizes
his criminal history is non-violent, the trial court was still permitted to
take this history into consideration.  See Rubac, 611 S.W.2d at 849 (listing
criminal history as one factor to consider).

In sum, considering all of the pertinent
factors, including the violent nature of the alleged offense, the potential for
significant punishment, the lack of any significant community ties, and the
associated flight risk, we hold that the trial court did not abuse its
discretion in setting appellant’s bail at $250,000.

We overrule appellant’s sole point
of error.

 

 

Conclusion

          We
affirm the order of the trial court. 

          

 

                                                          Terry
Jennings

                                                                   Justice


 

Panel
consists of Justices Jennings, Hanks, and Bland.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]           See Texas Penal Code Ann.
§ 20.04 (Vernon 2003).