

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00242-CR

Ex parte Brent Benefield § From the 30th District Court

§ of Wichita County (176,894-A)

§ January 17, 2013

§ Opinion by Justice Gardner

§ (nfp)

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's order. It is ordered that the order of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Anne Gardner



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00242-CR

EX PARTE BRENT BENEFIELD

----------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant Brent Benefield appeals the trial court's order setting the amount of his bail at $200,000.  *See* Tex. Code Crim. Proc. Ann. art. 11.24 (West 2005). Benefield asserts in one issue that the trial court abused its discretion by setting bail at an amount he cannot make and by failing to properly consider the nature and circumstances of the offense.  We affirm.

---
[1]*See* Tex. R. App. P. 47.4.

## II. Background

Benefield was arrested in April 2012 for the felony offense of injury to a child causing serious bodily injury or death. *See* Tex. Penal Code Ann. § 22.04(e) (West Supp. 2012). Bail was initially set at $1 million. Benefield filed an application for writ of habeas corpus, asserting that bail was excessive and asking that the trial court reduce the bond to a reasonable amount or grant him release on a personal recognizance bond. The trial court conducted a hearing on Benefield's application for writ of habeas corpus on May 18, 2012. After the hearing, the trial court advised the parties that it had, based on the evidence presented during the hearing, decided to reduce Benefield's bail from $1 million to $200,000. The trial court subsequently signed an order to that effect.

The State's only evidence, which the trial court admitted without objection, was the arrest affidavit. In the affidavit, Detective Todd Henderson averred that he was the primary investigator in the case. On February 8, 2012, emergency personnel responded to a 911 call from Benefield who stated that his four-month-old son was not breathing and was coughing up blood. Detective Henderson spoke with Benefield at the hospital, and Benefield said that he was the child's primary caregiver during the day and that his wife had left for work around 7:30 that morning.[2] Benefield reported that the child had acted normally until about noon but that his son became unresponsive and began coughing up blood when

---

[2]Benefield's wife told Detective Henderson that the child was "smiling and fine" when she left for work that morning.

2

he moved the child from a swing in order to change the child's diaper. Benefield told officers that he was the only person in contact with the child between 7:30 a.m. and the time he called 911.

Detective Henderson also stated in the affidavit that medical personnel had determined that the child had "numerous injuries to his body including a brain injury that resulted in a subdural hematoma inside his skull as a result of blunt force trauma." The child further had "retinal hemorrhages in both eyes, along with swelling of the brain." The child died four days later. The cause of death listed in the autopsy report was a "[c]losed head injury due to blunt impact to the head and brain," and the manner of death was listed as homicide.

Benefield called three witnesses during the hearing: his mother, his former mother-in-law, and himself. Benefield testified that he was thirty years old and had lived in Wichita Falls for sixteen or seventeen years. He had been employed off and on throughout the community, and his most recent employment was as a warehouse associate for Harbor Freight Tools.

Benefield is married and has two other children, ages three and six. He testified that he has no criminal history other than arrests for failure to pay traffic tickets. He testified that he was aware of the investigation concerning this case and that it lasted several months before his arrest. Benefield testified that he received a phone call from the detective who said that officers were on their way to arrest him. Benefield waited for the officers to arrive and allowed them to

3

peacefully arrest him. He testified that he had "ample opportunity" to run but did not do so.

Benefield also testified that he did not plan to run away if he were released and that although he is no longer employed, he planned to find employment upon release from custody. Concerning assurances that he could give the trial court, Benefield testified, "I don't really know what I can give other than I'm not leaving any -- any time because I have a six year old and a three year old that I can't leave."

Benefield testified that he does not have money in a bank account, that he does not own a vehicle or home, that he could not personally post any amount of bail, that he would rely on family and friends to help him make bail if the amount was reduced by the trial court, and that his family and friends had indicated a willingness to help him.

Angela Waldrop is Benefield's former mother-in-law. She testified that she had seen Benefield interact with his daughter many times over the years. Waldrop described Benefield as "[e]xtremely loving," and that she had "never seen any temper," and that "he treat[ed his daughter] like the little princess she is." Waldrop testified that she did not believe Benefield to be a threat to the community and that he has a good support structure in the community to help him.

Terri Daugherty, Benefield's mother, testified that Benefield had always been "excellent" with his children, had been a "very good dad," and had a "really

low-key" personality. Daugherty testified that she and her husband lived in Wichita Falls and that she had never seen anything out of the ordinary with Benefield's interaction with his children. Daugherty testified that she had provided support to Benefield and his wife when needed and that Benefield did not have the means to post $1 million in bail. She testified that Benefield would have to rely on friends and family to post any kind of bail. Daugherty also testified that Benefield had never before been in any kind of trouble and that she would help assure that he would abide by the court's orders concerning release on bail, including any prohibition that he not be around his children.

At the conclusion of testimony, Benefield offered an exhibit containing a recorded conversation between two of his attorneys and Dr. Lloyd White, the pathologist who performed the autopsy in this case. The State did not object to the exhibit, and the trial court admitted it for purposes of the hearing.

The recording reflects that Dr. White was reviewing a portion of the child's medical records while answering questions posed by Benefield's attorneys. Dr. White had noted during the autopsy that the child had suffered numerous injuries throughout his life. Dr. White opined that the child had sustained a spiral fracture in December 2011, and that fractures to the child's "long bones" were more recent. The child also had rib fractures that could have occurred in December.

Concerning the child's subdural hematoma, Dr. White stated that there is not a way of "dating it" but that it had probably occurred within twenty-four hours of the x-ray. Dr. White also noted other, smaller subdural hematomas that

appeared five to seven days older. Near the end of the recorded conversation, Dr. White stated that he did not know "whether [the State would] be able to come up with legal proceedings because . . . [w]ith criminal, you know, proceedings, you have to get into a beyond reasonable doubt realm" and that "this is a -- you know, kind of out in the gray zone."

After Benefield filed notice of this appeal, he filed a motion to reconsider in the trial court. In that motion, Benefield argued that newly discovered evidence, including information within police investigation records stating that Benefield's wife suffers from post-partum depression and had stopped taking her medication before the child had been fatally injured, raised doubt as to whether probable cause supported Benefield's continued detention. The appellate record includes the motion to reconsider but does not include an order granting or denying Benefield's motion to reconsider.

While this appeal was pending, a grand jury indicted Benefield for serious bodily injury to a child.[3]

---

[3]To the extent Benefield contends on appeal that there was no probable cause to justify his detention at the time of his application for writ of habeas corpus, that argument is now moot because of Benefield's intervening indictment. *See Ex parte Preston*, 533 S.W.2d 820, 821 (Tex. Crim. App. 1976) ("The return of an indictment establishes probable cause as a matter of law. Therefore, the question of probable cause to hold appellant has been rendered moot."); *Golden v. State*, 288 S.W.3d 516, 518 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). The return of the indictment does not, however, render moot Benefield's appeal for the reduction of the amount of bail. *See Ex parte Johnston*, 533 S.W.2d 349, 352 (Tex. Crim. App. 1976).

## III. Discussion

We review the trial court's ruling on the setting of bail for an abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981); *Ex parte Scott*, 122 S.W.3d 866, 868 (Tex. App.—Fort Worth 2003, no pet.); *see also* Tex. Code Crim. Proc. Ann. art. 17.15 (West 2005). To determine whether the trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles, i.e., whether the trial court's action was arbitrary or unreasonable. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in similar circumstances does not demonstrate that an abuse of discretion has occurred. *Id.*

The primary purpose of a bail bond is to secure the defendant's presence at trial on the offense charged. *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Scott*, 122 S.W.3d at 868. Accordingly, bail should be set high enough to give reasonable assurance that the defendant will appear at trial, but it should not operate as an instrument of oppression. *Scott*, 122 S.W.3d at 868. The pretrial bail amount must be set sufficiently high to secure the accused's presence at trial because he might fail to appear when facing the prospect of a lengthy sentence. *See id.* at 869. A defendant's inability to meet the bail set by the trial court does not automatically render the amount excessive. *Id.* at 870.

Code of criminal procedure article 17.15 sets forth the following criteria for establishing the amount of bail to be required:

> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15.

In addition to these factors, the court should also weigh the following in determining the amount of bail: the accused's work record; the accused's family and community ties; the accused's length of residence in the county; the accused's prior criminal record, if any; the accused's conformity with the conditions of any previous bond; the existence of outstanding bonds, if any; and aggravating circumstances alleged to have been involved in the charged offense. *Rubac*, 611 S.W.2d at 849–50; *Scott*, 122 S.W.3d at 869; *see Ex parte King*, No. 10-09-00164-CR, 2009 WL 2767725, at *1 (Tex. App.—Waco Aug.19, 2009, no pet.) (mem. op., not designated for publication). The defendant bears the burden of showing that he is entitled to a reduction in bail. *Rubac*, 611 S.W.2d at 849;

8

*Maldonado v. State*, 999 S.W.2d 91, 97 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

Benefield argues that his voluntary cooperation with authorities during the investigation, including that he was the person who initially called 911, and his local ties to Wichita Falls demonstrate that he needs little financial incentive to ensure his appearance at trial. He further asserts that a lower bail amount is necessary because he established that he cannot make bail at any amount and must rely on friends and family. Benefield also points to the evidence that he has no criminal history and poses no risk to his other children. Concerning the circumstances of the case, Benefield contends that the trial court failed to adequately consider the strength of the State's case against him, and he points to the police records reflecting his wife's depression and to Dr. White's opinions that some of the child's injuries were caused over a period of months. In conclusion, Benefield asserts that because the circumstances of the crime do not definitively point to his guilt and because he cannot make bail in the amount of $200,000, bail in the amount of $200,000 is excessive.

The State responds that nothing in the record suggests that the trial court set bail at $200,000 in an effort to prevent his release, particularly given the trial court's reduction of bail by $800,000. The State further argues that, despite Benefield's assertions that he cannot afford bail in any amount, Benefield has not shown that he could not rely on others to help him post bail at $200,000. The State also points out that the crime for which Benefield has been charged carries

a punishment range of five to ninety-nine years or life[4] and that Benefield is charged with causing his child's death through blunt-force trauma to the head. Citing this court's opinion in *Ex parte Bennett*, the State asserts that bail in the amount of $200,000 is reasonable for this case. *See* No. 02-07-00175-CR, 2007 WL 3037908, at *2, 4 (Tex. App.—Fort Worth Oct. 18, 2007, no pet.) (mem. op., not designated for publication) (affirming $200,000 bond for defendant charged with aggravated sexual assault of a child).

With the above-stated principles and the parties' arguments in mind, we consider whether the trial court abused its discretion by setting Benefield's bail at $200,000. Benefield is charged with a first-degree felony and faces the possibility of up to ninety-nine years or life incarceration. *See* Tex. Penal Code Ann. §§ 12.32(a), 22.04(e). Also, the record contains no evidence indicating that the trial court rendered its decision for the purpose of forcing Benefield to remain incarcerated pending trial. *Cf. Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.) (noting that the trial judge had stated that it would "rather see him in jail than to see someone's life taken"). On the other hand, Benefield presented evidence that he has strong ties to the community, that he has no prior criminal record, and that he voluntarily spoke with police during the investigation. Benefield also presented evidence that he cannot make bail in any amount. Although a defendant's ability to make bail is a factor for consideration,

---

[4] *See* Tex. Penal Code Ann. § 22.04(e); *see id.* § 12.32(a) (West 2011).

10

the inability to make bail—even to the point of indigence—does not control over the other factors. *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.] 1980); *Ex parte Davis*, 147 S.W.3d 546, 548 (Tex. App.—Waco 2004, no pet.).

Benefield unquestionably presented evidence favorable to his application for writ of habeas corpus, but given the serious nature of the crime for which he is accused, the possibility of a substantial term of incarceration, the absence of any indication that the trial court set bail at $200,000 so that Benefield would remain incarcerated, and the trial court's reduction of bail from $1 million to $200,000, we cannot say that Benefield has satisfied his burden of showing that bail in the amount of $200,000 is excessive. *See Ex parte Poullard*, No. 14-10-01034-CR, 2011 WL 304212, at *3 (Tex. App.—Houston [14th Dist.] Jan. 27, 2011, no pet.) (mem. op., not designated for publication) (holding the appellant did not meet burden of showing excessive bond and noting that trial court had reduced bond from $1 million to $250,000); *Bennett*, 2007 WL 3037908, at *2–4 (affirming $200,000 bail amount). We thus cannot hold that the trial court abused its discretion, and we overrule Benefield's sole issue.

## IV.  Conclusion

Having overruled Benefield's sole issue, we affirm the trial court's order.


ANNE GARDNER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 17, 2013