

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00313-CR

EX PARTE LEWIS
EDWARD CAMPBELL

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

In a single issue, Appellant Lewis Edward Campbell appeals the trial court's order denying his motion for personal bond or bond reduction. We affirm.

## II. Factual and Procedural Background

The trial court set Campbell's bail at $3,000,000: $750,000 each for three counts of aggravated sexual assault of a child; $500,000 for one count of attempted aggravated sexual assault of a child; and $250,000 for one count of

---

[1]See Tex. R. App. P. 47.4.

indecency with a child. The indictment alleged that Campbell had forced a child, who was under the age of fourteen, to have contact with his sexual organ and to contact her sexual organ with his mouth, that he had digitally penetrated her sexual organ, that he had made the child touch his genitals, and that he had attempted to penetrate the child's anus with his sexual organ. In Campbell's motion for personal bond or for bond reduction, Campbell's appointed counsel stated that Campbell was indigent and could not afford to make bail.

The State offered, and the trial court admitted, the following at the May 2013 hearing on the motion: the probable cause affidavits for the aggravated sexual assault charges; Campbell's arrest history; his Tennessee indictment and the warrant for his extradition; the probable cause affidavit for his assault on a public servant charges that he incurred while awaiting trial on the offenses at issue here; and the order denying bail signed by the justice of the peace in November 2012.

In State's Exhibit 1, the first probable cause affidavit, which was sworn on September 19, 2012, the affiant stated that on February 6, 2012, Child Protective Services received a report of a nine-year-old child's outcry of sexual abuse by her father. During the child's interview, she stated that in the early morning of February 3, 2012, Campbell took her from her bed into the living room, put his "private" in her mouth, and put his "private to her butt." The child said that he had started doing "nasty things" to her as far back as August 2011. The affiant stated that Campbell was no longer residing in Wichita County, that he was employed

2

as a road truck driver for a Dallas-based company, and that his whereabouts were unknown.

In State's Exhibit 2, the second probable cause affidavit, which was sworn on September 19, 2012, the affiant stated that during the same February 6, 2012 interview, the child reported that in January 2012, when Campbell was home for around two days, he woke her during the night and put his finger "to her private," hurting her, and that he told her to shut up.

State's Exhibit 3, Campbell's arrest history, shows that prior to his arrests for aggravated sexual assault of a child, he was arrested for misdemeanor theft of a service in 1994 and burglary of a habitation (a second degree felony), aggravated assault of a public servant (a first degree felony), evading arrest or detention using a vehicle (a misdemeanor), and unlawful carrying of a weapon (misdemeanor) in 1999. Campbell pleaded guilty to misdemeanor driving with a suspended license in 2000. State's Exhibit 3 also reflects his arrests for the instant offenses in October 2012. Other than his guilty plea to misdemeanor driving with a suspended license, the exhibit does not indicate whether he was convicted for any of the other offenses.

State's Exhibit 4 shows Campbell's Tennessee indictment for rape of a child, which alleged that on or about August 3, 2012, Campbell had "unlawfully and intentionally, knowingly or recklessly engage[d] in sexual penetration of [S.C.], a child less than thirteen (13) years of age." It also contained the warrant for his extradition.

State's Exhibit 5 contains the probable cause affidavit sworn on January 20, 2013, in which the affiant stated that two uniformed officers at the Wichita County Jail had entered into "tank 8-5" to gain control of a disruptive inmate—Campbell—who had been told to sit down multiple times. After Campbell also refused to turn around, he struck the officers after they attempted to gain control of him and escort him from the tank. State's Exhibit 6 contains the November 26, 2012 denial of Campbell's motion for reduction of bond.

Campbell, his fiancée Charlene, and his friend Lori testified at the hearing. Campbell testified that he had lived in the Wichita area "off and on" for around seventeen years but "stayed most of it away from" the area because he had joined the military. When asked if he had family in Wichita Falls, he replied, "I have family." Campbell said that he would live with his fiancée if the trial court gave him a bond he could afford or a personal recognizance bond and that it "should just be [the two of them]." He stated that he had been in trouble a few times before but that he had gone to all of his court dates when he had been on bond once before. Before he was arrested, he had been a contract truck driver, earning roughly $5,000 per month. Campbell stated that if he could get his bond settled, depending on what his company decided, he would likely be able to return to work. When he learned about the arrest warrant, he was in Laredo, Texas, near the Mexico border, to pick up a load bound for Atlanta, Georgia. He said that he turned himself in when he arrived in Dallas, stating, "I don't run from nothing."

4

Campbell stated that his checking account would have nothing in it until his monthly $901 VA disability check arrived and that he could not make bond at the level currently set, although he had not contacted a bondsman to find out how much it would cost. Campbell estimated that 10% of the bond "would just be way over [his] head" and that the maximum bond he could make would be one set at $75,000. He stated that he did not own any property, such as a car or home, that he could sell to raise a bond.

During cross-examination, Campbell denied that he left Texas and went to Tennessee after talking to detectives when the investigation started. He agreed that his children moved to Tennessee with his fiancée in August 2012 but said that he did not move there. He stated that he had visited his children in Tennessee but not after the first few days of August. Campbell agreed that he had a pending indecency case in Tennessee and that he had "picked up" two pending aggravated assault charges while in jail in Wichita Falls.

Charlene testified that she had known Campbell for around nineteen years, that Campbell had always worked and been responsible for his family, and that he paid his bills on time when funds were available. She planned to move to an apartment in Burkburnett that weekend and said that she had two jobs that paid $10 an hour. She had not contacted a bondsman about Campbell's bond because there was no way that she could afford it, and she said that if she and Campbell's friends and family worked together, $10,000 would be the most they could pay a bondsman.

During cross-examination, Charlene agreed that she had spoken with a detective in February 2012 while the two girls were interviewed and at that time, she was made aware of the allegations against Campbell. She then moved the children to Tennessee, stating that she had been told that the case was closed. She said, "Yes," when asked whether Campbell had access to the girls in the house in Tennessee where they had moved.

Lori testified that she had known Campbell since he was around sixteen years old and that he had lived with her when he was younger. She stated that as long as Campbell could work, he would work. She agreed that if the trial court granted Campbell a bond that he could afford or a personal recognizance bond, she would help ensure that he followed the rules and conditions of his bond and make sure that he was in court on time.

The trial court denied Campbell's motion, and this appeal followed.

### III. Bail Reduction

In his single issue, Campbell complains that the trial court abused its discretion when it denied his motion because he did not have the ability to make the amount set.

We review the denial of a bail reduction request for an abuse of discretion. *See* Tex. Code Crim. Proc. Ann. art. 17.15 (West 2005); *Ex parte Hunt*, 138 S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pet. ref'd); *see also Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). A trial court abuses its discretion if it acts without reference to any guiding rules or principles,

6

i.e., if the trial court's actions were arbitrary or unreasonable. *Hunt*, 138 S.W.3d at 505.

The primary purpose of an appearance bond is to secure the defendant's presence at trial on the offense charged, and bail should be set high enough to give reasonable assurance that he will appear, while not operating as an instrument of oppression. *Id.*; *see also* Tex. Code Crim. Proc. Ann. art. 17.15(1)–(2). The appellant bears the burden to show that the bail, as set, is excessive. *Hunt*, 138 S.W.3d at 505–06. In determining the amount set, the court should consider such factors as the accused's work record, family ties, length of residency, prior criminal record, conformity with the conditions of any previous bond, the existence of outstanding bonds, any aggravating circumstances alleged to have been involved in the charged offense, and the future safety of a victim of the alleged offense and the community; the accused's potential sentence and the nature of the crime are also primary factors to be considered. *Id.* at 506; *see also* Tex. Code Crim. Proc. Ann. art. 17.15(3)–(5). The inability to meet the amount set by the trial court does not automatically render it excessive. *Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App.—Fort Worth, no pet.).

Campbell argues that the testimony at the hearing supports that he could not afford a $3,000,000 bail and that his friends and family together could only come up with $10,000 to give a bonding company. He also contends that the evidence showed that his support network would ensure his appearance at court,

7

that he would follow any orders or conditions of bond, that he had ties to the community, and that he would make no attempts to avoid prosecution.

While the amount set is indisputably high, and Campbell might be unable to make bond without a reduction,[2] we disagree that the evidence shows that he had ties to the community or that, in light of the circumstances, the amount is excessive. Campbell testified that he had lived in the Wichita area "off and on" for seventeen years but mostly "off," due to military service, and he was employed in interstate trucking and planned to resume this work if he could make bond. Although Campbell stated that he had "family" in Wichita Falls, he did not elaborate whether this meant just his fiancée and the long-time friend who testified on his behalf at the hearing or an extended network of relatives that would bind him to the community and help protect it. Based on this record, the trial court could have reasonably concluded that Campbell lacked sufficient ties to the community and that if he resumed working in interstate trucking, he would frequently be out of state, which might allow him to avoid prosecution by simply failing to return.

Further, Campbell was charged with having sexually abused his nine-year-old child. If granted a bond he could afford, he planned to live with his fiancée, who was moving back to the area. Although Campbell testified that it would be

---

[2]Campbell and his fiancée testified that they had not contacted a bondsman to find out how much it would cost for Campbell to obtain a bond on the amount set by the trial court.

just he and his fiancée living together, neither he nor his fiancée testified about where the child was living now or where she would live while Campbell awaited his trial for having allegedly sexually assaulted her; the record also contains Tennessee's indictment against Campbell for child rape, which allegedly occurred while Campbell's fiancée had the child in Tennessee.

Additionally, the punishment range for aggravated sexual assault of a child, a first degree felony, is confinement for life or from five to ninety-nine years. Tex. Penal Code Ann. § 12.32 (West 2011), § 22.021(e) (West 2011 & Supp. 2012). "Perhaps reflecting the wide range of punishment for such offenses, Texas courts have approved bond amounts as low as $1,000 and as high as $1,000,000 for first-degree felony offenses." *Ex parte Moore*, No. 03-12-00259-CR, 2012 WL 2078257, at *4 & n.7 (Tex. App.—Austin June 8, 2012, no pet.) (mem. op., not designated for publication). The punishment range for indecency with a child, a second degree felony, is confinement from two to twenty years. Tex. Penal Code Ann. §§ 12.33, 21.11(a)(1), (d) (West 2011). The punishment range for attempted aggravated sexual assault of a child is that of a second degree felony. *Id.* § 15.01(a), (d) (West 2011). If found guilty of more than one of the sexual offenses arising out of the same criminal episode and prosecuted in a single criminal action, because of the victim's age, the sentences for all but the attempt offense may be set to run consecutively. *Id.* § 3.03(b)(2)(A) (West 2011 & Supp. 2012).

Given the lack of evidence to show Campbell's ties to the community and how long he had actually spent in the community or would spend there if granted a bail reduction and allowed to return to work, the seriousness of the offenses with which he was charged, the lack of testimony about where the victim would reside for her future safety, the additional offenses that Campbell had allegedly committed while awaiting trial on the aggravated sexual assault of a child offenses, and his potential sentences if found guilty of the charged offenses, we cannot conclude that the trial court abused its discretion by denying Campbell's motion for personal bond or bond reduction or that, under the circumstances, Campbell has shown that the amount set for the five offenses is excessive. *See Ex parte Bennett*, No. 02-07-00175-CR, 2007 WL 3037908, at *3–4 (Tex. App.— Fort Worth Oct. 18, 2007, no pet.) (mem. op., not designated for publication) (concluding that trial court did not abuse its discretion by denying reduction of three $200,000 bonds for aggravated-sexual-assault-of-a-child offenses even though appellant was eligible for probation if convicted, had lived in the area for thirty-five years, and had worked for the same employer for most of twenty years); *see also Moore*, 2012 WL 2078257, at *1, *4 (affirming denial of motion to reduce $475,000 bond on father's indictment for nine different acts of sexual abuse starting when child was nine when, among other things, "the record reflects that the allegations in this case are very serious, and even more so when they are considered in light of the familial relationship between Moore and his alleged victim"); *Ex parte Leonard*, No. 05-12-00401-CR, 2012 WL 4497654, at

*1 (Tex. App.—Dallas Oct. 1, 2012, no pet.) (mem. op., not designated for publication) (affirming denial of motion to reduce bond from $500,000 for single count of aggravated sexual assault with a deadly weapon); *Ex parte Hall*, No. 10-11-00087-CR, 2011 WL 2520020, at *1–2 (Tex. App.—Waco June 15, 2011, no pet.) (mem. op., not designated for publication) (affirming trial court's decision to only reduce bail from $100,000 per offense to $50,000 per offense—from $1.2 million to $600,000—for eleven counts of aggravated sexual assault of a child under fourteen and one count of indecency when, despite appellant's showing that he had ties to the community, employment history, a good bail history, and employability, the offenses' seriousness showed that he could be facing a significant sentence if convicted and he was on probation for another offense when he allegedly committed the instant offenses). We overrule Campbell's sole issue.

## IV. Conclusion

Having overruled Campbell's sole issue, we affirm the trial court's order.

PER CURIAM

PANEL: MCCOY, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 12, 2013