

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00447-CR

EX PARTE ALBERT PAYTEN

----------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Albert Payten appeals from the trial court's denial of his application for writ of habeas corpus seeking a bail reduction. *See* Tex. R. App. P. 31. Because the trial court did not abuse its discretion by denying relief, we will affirm the trial court's order.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Payten is charged with aggravated robbery. The trial court set pretrial bail in the amount of $750,000. Payten filed an application for writ of habeas corpus, arguing that the $750,000 bail amount is excessive, oppressive, and beyond his financial means. At the hearing on his application, Payten testified that he is unable to make bail in the amount of $750,000. He said that he contacted a bondsman who said "it's impossible for a bondsman to make that type of bond." Payten testified that he has been bonded out in the past and that "the going rate" is usually ten percent, meaning that a $75,000 premium would be required for a bond in this case. Payten explained that he has no bank accounts, cash, vehicle, real estate, jewelry, electronics, or anything of value. Payten said he could make a lower bail, however, by getting help from his two sisters. Payten was not sure of the exact amount of money that his sisters could provide, but he thought they could help him make bail between $50,000 to $100,000. Payten testified that if he made bail, he would live with his mother in Wichita Falls. He said that he had worked for Dean Drilling in Archer City in the past but that he was currently unemployed.

Payten also offered into evidence as Defendant's Exhibits 1, 2, and 3 an affidavit of nonprosecution from the complainant in this case and two affidavits from alleged witnesses to the robbery, who recanted their prior statements to police that Payten was involved in the robbery. The trial court admitted the

2

exhibits in evidence but noted at the conclusion of the hearing that it gave very little weight to them "because they are hearsay and they aren't very impressive."

On cross-examination, Payten testified to some of his prior convictions, and the State introduced in evidence judgments of the following prior convictions: credit card abuse that occurred on December 16, 2005, robbery that occurred on June 16, 2006, assault/family violence that occurred on July 3, 2009, violation of a protective order that occurred on August 4, 2009, and another violation of a protective order that occurred on August 19, 2009. State's Exhibit 6 is a copy of Payten's criminal history record showing his prior arrests and nine prior convictions or adjudications.

State's Exhibit 7 is the probable cause affidavit for the current offense, which alleges the following. Three men entered a residence in Wichita Falls and robbed the residents at gunpoint. The residents knew Payten and one of the other robbers. During the robbery, Payten struck one of the residents in the head with a gun. After the robbers left with money and property, they fired at least eight gunshots at the house from their car. One resident was shot twice, once in his face. According to the probable cause affidavit, Payten "is a known Blood Gang Member."

The State also introduced evidence of Payten's previous three violations of bond conditions, including that he gave a fraudulent check to one bondsman, that he failed to keep another bondsman informed of his whereabouts and check in as agreed, and that he failed to maintain contact with his attorney.

3

At the conclusion of the hearing, the trial court noted its concerns that the current offense was a violent crime and that Payten has a lengthy criminal record and "is pretty well known to this Court." The trial court also emphasized that Payten's prior convictions for violating protective orders and his prior violations of bond conditions show that he has a history of failing to comply with court orders. The trial court denied Payten's application for habeas relief.

### III. STANDARD OF REVIEW AND LAW ON BAIL

We review a trial court's ruling on the setting of bail for an abuse of discretion. *See* Tex. Code Crim. Proc. Ann. art. 17.15 (West 2005); *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the trial court's action was arbitrary or unreasonable. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.*

The primary purpose of an appearance bond is to secure the presence of the defendant at trial on the offense charged. *Ex parte Scott*, 122 S.W.3d 866, 868 (Tex. App.—Fort Worth 2003, no pet.) (citing *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977)). Federal and state law both prohibit the imposition of excessive bail. U.S. Const. amend. VIII; Tex. Const. art. I, § 13.

4

The defendant bears the burden of proving that bail, as set, is excessive. *Scott*, 122 S.W.3d at 868–69 (citing *Rubac*, 611 S.W.2d at 849). Bail may be deemed oppressive when the trial court sets it at an amount "for the express purpose of forcing [a defendant] to remain incarcerated." *Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.).

Statutory and common law factors guide a trial court's determination of appropriate bail. The code of criminal procedure provides,

> The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:
>
> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15. In addition to these statutory factors, the court of criminal appeals has instructed courts to also consider the accused's work record, the accused's family ties, the accused's length of residency, the accused's prior criminal record, the accused's conformity with the conditions of any previous bond, the existence of any outstanding bonds, and aggravating

5

circumstances alleged to have been involved in the charged offense. *Rubac*, 611 S.W.2d at 849–50; *Scott*, 122 S.W.3d at 869.

## IV. NO ABUSE OF DISCRETION BY REFUSING TO REDUCE BAIL

The nature of the offense that Payten is charged with and the circumstances surrounding that offense are primary factors in determining what constitutes reasonable bail. *See* Tex. Code Crim. Proc. Ann. art. 17.15(3); *Ex parte Davila*, 623 S.W.2d 408, 410 (Tex. Crim. App. [Panel Op.] 1981). When the nature of the offense potentially merits a lengthy prison sentence upon conviction, pretrial bail must be sufficiently high so as to secure the presence of the accused because the accused's reaction to the prospect of a long sentence may be to not appear. *Scott*, 122 S.W.3d at 869. Aggravated robbery is a first-degree felony, and if convicted, Payten faces a sentence of between five and ninety-nine years' or life imprisonment.[2] *See* Tex. Penal Code Ann. §§ 12.32(a), 29.03(a) (West 2011); *see also* Tex. Code Crim. Proc. Ann. art. 17.15(3). The probable cause affidavit admitted in evidence at the hearing shows the violent circumstances of the alleged aggravated robbery, including that one of the victims was shot in the face.

Payten's inability to make the current amount of bail is merely one factor to be considered in determining the appropriate amount of bail and, standing alone, does not singularly render the bail excessive. *See Scott*, 122 S.W.3d at 870 ("If

---

[2]The record on appeal does not include the indictment, and we do not know whether any enhancements have been alleged.

6

the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be.") (quoting *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd)); *see also* Tex. Code Crim. Proc. Ann. art. 17.15(4). Payten testified in general terms that he thought his sisters could help him make bail if it were reduced to between $50,000 and $100,000, but he did not offer any evidence of his family's specific assets and financial resources or explain what efforts were being made to make his bail. *See Scott*, 122 S.W.3d at 870 (explaining that "vague references to [a defendant's] inability to make bond" do not fulfill a defendant's burden of proof in a proceeding for reduction of bail); *see also Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("To show that he is unable to make bail, a defendant generally must show that his funds and his family's funds have been exhausted."). His testimony that one bondsman told him that no bondsman would write a bond in the amount of $750,000 does not alone make the amount excessive. *See Wright v. State*, 976 S.W.2d 815, 820 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (holding that bail was not excessive even when no bond companies in the county were able or willing to write a bond for the amount set by the trial court).

Regarding the safety of the victims of the offense and the community, the victims of the robbery knew who Payten was, Payten has a substantial criminal history, including several violent crimes, and he is a known gang member. *See*

7

Tex. Code Crim. Proc. Ann. art. 17.15(5); *see also Ex Parte Beltran*, No. 04-96-00596-CR, 1996 WL 729935, at *2 (Tex. App.—San Antonio Dec. 18, 1996, no writ) (mem. op., not designated for publication) (considering gang membership in analysis of safety of victims and community).

Regarding the remaining nonstatutory factors the trial court could have considered, Payten last worked for a drilling company but does not have a job to return to. The only family ties revealed by the record are that his mother lives in Wichita Falls and that he has two sisters. Finally, he has failed to comply with conditions of bond several times in the past.

After considering each of the statutory and common law factors relevant to the determination of reasonable bail, especially the nature and circumstances of the offense and Payten's prior criminal record, we hold that he has failed to demonstrate that bail in the amount of $750,000 is excessive or that the trial court abused its discretion by refusing to lower the amount. *See Rubac*, 611 S.W.2d at 850; *Scott*, 122 S.W.3d at 868; *see also Ex Parte Murray*, No. 02-13-00151-CR, 2013 WL 5425312, at *8 (Tex. App.—Fort Worth Sept. 26, 2013, no. pet. h.) (mem. op., not designated for publication) (upholding trial court's decision not to reduce $750,000 bail amount for aggravated assault with deadly weapon based in part on the appellant's substantial criminal history, the serious nature of offense, and his failure to show that he could not make bail); *Ex parte Leonard*, No. 05-12-00401-CR, 2012 WL 4497654, at *1–4 (Tex. App.—Dallas Oct. 1,

2012, no pet.) (mem. op., not designated for publication) (upholding bail of $500,000 when defendant had a lengthy and violent criminal history).

## V. CONCLUSION

Having determined that the trial court did not abuse its discretion, we affirm the trial court's order denying Payten's application for writ of habeas corpus.

PER CURIAM

PANEL:  WALKER, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  November 7, 2013