**Affirmed and Opinion filed May 23, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00002-CR

## EX PARTE DENNIS JOE PHARRIS

**On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 1369073**

### O P I N I O N

Appellant Dennis Joe Pharris appeals the trial court's denial of his application for writ of habeas corpus seeking a reduction in bond. In a single issue he argues that his bail is excessive and that the trial court erred in failing to lower his bond to $200,000. We affirm.

### BACKGROUND

According to appellant's application for writ of habeas corpus, appellant was indicted for the offense of securing execution of a document by deception. He was arrested on June 26, 2012, and bond was set at $900,000. On July 5, 2012, the trial court reduced appellant's bond to $600,000. Appellant stated he could afford a $300,000 bond.

On December 11, 2012, the trial court held a hearing on appellant's application for writ of habeas corpus. Appellant did not offer evidence in support of his application. However, the court took judicial notice of evidence presented at a bond hearing held July 5, 2012.

At the July 5, 2012 hearing, Miguel Rodriguez, an employee of A Way Out Bail Bonds, testified that appellant has been a client of A Way Out since 2009 or 2010. During that period of time Rodriguez issued several bonds on appellant, and appellant has consistently communicated with the bonding company. Rodriguez previously posted at least three bonds for appellant, one of which was for $200,000. Each of those bonds was surrendered when appellant was arrested in this case. Rodriguez testified that his underwriter will not permit bonds larger than $300,000.

The State presented the testimony of Trevor Paulsen, appellant's former employee. Paulsen testified that appellant, using the name Steve Howell, approached him about purchasing homes and yachts worth several million dollars. Despite appellant's probation condition in federal court that required appellant to remain in the Southern District of Texas, Paulsen and appellant traveled to California, New York and Florida. Paulsen was with appellant when he purchased "numerous expensive vehicles." Appellant garaged the vehicles at different locations to hide them from his federal probation officer. Paulsen observed appellant use other people's computer-generated signatures to sign various financial documents. The State introduced a stock option agreement that Paulsen received from appellant via email. The agreement purported to sell stock in a company that did not exist. Paulsen testified that, at the time of the hearing, appellant continued to sell stock in the non-existent company.

Paulsen contacted the Harris County District Attorney's Office earlier in the

2

year to express his fear about testifying against appellant. He learned that appellant had threatened the prosecutor in this case. Appellant contacted another individual who had been prosecuted by the same assistant district attorney to solicit that individual's help in harming the prosecutor. An anonymous letter was sent to appellant's home with an aerial photograph of the prosecutor's home. Appellant believed the individual he contacted sent the photograph. After appellant's daughter was arrested, appellant told Paulsen, in reference to the prosecutor, "I'm going to bury that bitch. . . . I've already called my guys."

During closing argument, the prosecutor averred that appellant had been previously convicted four times. In the fourth conviction he pleaded guilty to theft of more than $14 million. At the conclusion of the hearing, the trial court reduced appellant's bond to $600,000.

## STANDARD OF REVIEW

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U. S. CONST. amend. VIII; *see also Schilb v. Kuebel*, 404 U.S. 357, 365, (1971) (applying Eighth Amendment prohibition of excessive bail to the States). The standard for reviewing whether excessive bail has been set is whether the trial court abused its discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981). A defendant carries the burden of proof to establish that bail is excessive. *Id.* at 849. In reviewing a trial court's ruling for an abuse of discretion, an appellate court will not intercede as long as the trial court's ruling is at least within the zone of reasonable disagreement. *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd) (*citing Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990)).

## ANALYSIS

In a single issue, appellant contends the trial court erred in refusing to set

bail in the amount of $200,000 after the State's failure to make a prima facie showing of being ready for trial within 90 days of appellant's incarceration. Appellant relies on section 1, article 17.151 of Texas Code of Criminal Procedure, which provides that a defendant who is detained in jail pending trial of an accusation against him must be released either on personal bond or by reducing the amount of bail required if the State is not ready for trial of the criminal action for which he is being detained within 90 days from the commencement of his detention if he is accused of a felony. *See* Tex. Code Crim. Proc. Ann. art. 17.151 § 1(1). Appellant argues that in light of this statute, the trial court had no discretion to act other than to release him on personal recognizance or a bond in the amount he could afford.

The language of article 17.151 requires that when the defendant has been incarcerated and there has been a 90-day period of delay in which the State has not announced ready for trial, the trial court must either release the defendant on a personal bond or allow the defendant to secure his release by setting a bail in some amount. *See* Tex. Code Crim. Proc. art. 17.151; *see also Rowe v. State*, 853 S.W.2d 581, 582 (Tex. Crim. App. 1993). Despite the mandatory nature of the language of article 17.151 our court holds that, a trial court has discretion to consider future safety of a victim of the respective alleged offense in fixing a defendant's bail in cases in which a defendant seeks a bond reduction under article 17.151. *Ex parte Hurst*, No. 14-12-01151-CR, 2013 WL 1437732, at *2 (Tex. App.—Houston [14th Dist.] Apr. 9, 2013, n.p.h.) (per curiam) (mem. op., not designated for publication)(reasoning that because the Legislature amended article 17.15 after adoption of 17.151 and made the revision applicable to "any case," it vested trial court's discretion to consider the new factor, community-safety concerns, even in cases to which 17.151 is applicable). Article 17.15 provides:

4

The amount of bail to be required *in any case* is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex .Code Crim. Proc. Ann. art. 17.15.[1] Therefore, when considering a bond reduction under article 17.151, the trial court has a duty to consider article 17.15's factors, such as "the nature of the offense and the circumstances under which it was committed" and "the future safety of the victim and the community," as well as whether bail is excessive. *See id.* (reasoning that because the Legislature amended article 17.15 after adoption of 17.151 and made the revision applicable to "any case," it vested trial court's discretion to consider the new factor, community-safety concerns, even in cases to which 17.151 is applicable).

Other courts have also concluded that article 17.15 applies to bail hearings under article 17.151. *See, e.g.*, *Matthews v. State*, 327 S.W.3d 884, 887 (Tex. App.—Beaumont 2010, no pet.). In *Ex parte Matthews*, the court noted after the

---

[1] In addition to considering the factors in article 17.15, the courts have added seven other factors to be weighed in determining the amount of bond: (1) the accused's work record; (2) the accused's family and community ties; (3) the accused's length of residency; (4) the accused's prior criminal record; (5) the accused's conformity with previous bond conditions; (6) the existence of other outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the charged offense. *Ex parte Rubac*, 611 S.W.2d at 849–50.

decision in *Rowe*, article 17.15 was amended to place a duty on trial courts setting bail to consider not only the defendant's ability to make bail, but also to consider factors not related to the amount the defendant can afford to pay, such as the future safety of the community, in fixing the amount of a defendant's bail. *See* 327 S.W.3d at 887. As the *Matthews* court explained: "We doubt that the Legislature intended to mandate trial courts to release defendants on bail on a personal bond or based solely on the amount they can afford in cases in which the defendant, although unable to pay a significant bail, represents a real threat to his victim or to the community; there are considerations that extend beyond the criteria of article 17.171 § 1 which focuses only upon the defendant's ability to pay." *Id.*

The *Matthews* court held that the trial court properly considered community safety concerns in setting the capital-murder defendant's bail at $475,000, even though the State conceded it was not ready for trial within 90 days of the defendant's incarceration and the defendant argued that his bail should be fixed at $50,000. *Id.* at 888. Other courts have held similarly. *See Garner v. State*, No. 11-12-00211-CR, 2012 WL 3765089, at *1 (Tex. App.—Eastland Aug. 31, 2012, no pet.) (concluding that article 17.15 places a duty on trial courts to consider factors in addition to the defendant's ability to make bail when considering a defendant's request for release under article 17.151 and holding that trial court did not abuse its discretion by setting bail at $750,000 for capital-murder defendant); *Ex parte Robinson*, 2012 WL 1255188, at *3 (Tex. App.—Corpus Christi Apr. 12, 2012, pet. ref'd) (not designated for publication) (affirming trial court's order setting bail at $750,000 on the defendant's capital-murder charge, even though the State was not ready for trial within ninety days of the commencement of the defendant's detention as required under art. 17.151).

In this case, the alleged offense, in addition to other pending indictments

6

against appellant, includes allegations that appellant engaged in a scheme that included selling stock in a non-existent company. The range of punishment is confinement for 25 years to life. *See* Tex. Penal Code Ann. §§ 12.42(d) & 32.46. In appellant's most recent conviction, he pleaded guilty to theft of over $14 million. Appellant argues, and the State concedes, that appellant has never missed a court appearance in the last nine years. There was testimony at the hearing that appellant violated a federal probation order requiring appellant to remain within the Southern District of Texas by traveling to New York, Florida, and California.

Just as a defendant's inability to afford bail does not, in itself, demonstrate that bail is excessive, a defendant's ability to afford bail in the amount set does not, in itself, justify bail in that amount. *Ex parte Beard*, 92 S.W.3d at 573. This factor will not favor bond reduction, however, when the defendant makes vague references to inability to make bond without detailing his specific assets and financial resources. *See, e.g. Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App.—Fort Worth 2003, no pet.) (in affirming trial court's refusal to lower bond, court cited as a factor absence of evidence regarding defendant's ability to make bond when defendant's evidence consisted of his testimony that he and his family lacked sufficient assets or financial resources to post the bond, but he did not detail either his or his family's specific assets and financial resources, nor did he explain what efforts, if any were made to furnish the bond).

In this case, there is no evidence of appellant's financial condition other than Rodriguez' testimony that appellant cannot make a $900,000 bond. But Rodriguez also testified that his company will only post a $300,000 bond for anyone. Appellant's lack of evidence of his financial condition is a consideration in reviewing the trial court's bond decision. *See Cooley v. State*, 232 S.W.3d 228, 234–38 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

7

Moreover, the safety of the community and the prosecutor is a consideration in this case. Paulsen testified that appellant threatened the prosecutor and contacted another individual in an effort to solicit that individual's help in harming the prosecutor. Paulsen also testified that appellant continues to sell stock in a non-existent company. The trial court could consider this testimony as evidence that appellant could be a danger to the community. Not only the evidence of intent to cause physical harm, but the potential to cause economic harm to potential victims by continuing to engage in allegedly fraudulent business transactions.

In *Ex parte Bogia*, 56 S.W.3d 835, 840 (Tex. App–Houston [1st Dist.].2001, no pet.), the court said, "At the $360,000 level, bail is oppressive unless justified by unusual circumstances." Based on the evidence before the trial court, it reasonably could have concluded the bail it set was justified by unusual circumstances. The trial court had before it evidence that appellant had engaged in years of fraud and theft by soliciting investment in non-existent companies. The court had no evidence before it of appellant's financial situation. Given the nature of appellant's previous offenses and the evidence that appellant threatened the prosecutor, the trial court could have reasonably concluded a high bond was necessary to deter appellant from carrying out his threats against the prosecutor and further sale of stock in a non-existent company.

The trial court's decision to reduce bail to $600,000 is not outside the zone of reasonable disagreement. We overrule appellant's issue and affirm the trial court's judgment.

/s/     Jeffrey V. Brown
Justice

Panel consists of Justices Brown, Christopher, and McCally.
Publish — TEX. R. APP. P. 47.2(b).