

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-13-00151-CR**
**NO. 02-13-00152-CR**
**NO. 02-13-00153-CR**

EX PARTE DEMETRICK DURAL
MURRAY

----------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Demetrick Dural Murray appeals the trial court's orders denying his motions to reduce bail.[2] He raises two issues on appeal: that the bond for

---

[1]*See* Tex. R. App. P. 47.4.

[2]A significant split exists among our sister intermediate appellate courts concerning whether a court of appeals has jurisdiction over orders denying motions to reduce bail. Among others, the Houston (First District), Corpus Christi, and Dallas courts have concluded that jurisdiction exists, and the Houston (Fourteenth District), Austin, and Waco courts have held that jurisdiction does not exist in such cases. *See Ex parte Ragston*, 402 S.W.3d 472, 478–79

$750,000 on a charge of aggravated assault with a deadly weapon constitutes excessive and oppressive bail and that the trial court failed to release him on personal bonds for charges of deadly conduct and theft of a firearm when a grand jury did not indict him within ninety days of his arrest.[3]

During the pendency of this appeal, the trial court issued a personal bond for the charges of deadly conduct and theft of a firearm, thereby rendering appellant's second issue moot. *See Ex parte Guerrero*, 99 S.W.3d 852, 853 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (mem. op.) (holding that an appeal from the denial of relief on a pretrial application for writ of habeas corpus seeking bail reduction was rendered moot when the trial court subsequently reduced the bail); *see also Ex parte Page*, No. 10-12-00117-CR, 2012 WL 2149236, at *1 (Tex. App.—Waco June 13, 2012, no pet.) (mem. op., not designated for publication). Accordingly, we overrule appellant's second issue

---

(Tex. App.—Houston [14th Dist.] 2013, pet. granted); *Ramos v. State*, 89 S.W.3d 122, 124–26 (Tex. App.—Corpus Christi 2002, no pet.); *Benford v. State*, 994 S.W.2d 404, 407–09 (Tex. App.—Waco 1999, no pet.); *Wright v. State*, 969 S.W.2d 588, 589 (Tex. App.—Dallas 1998, no pet.); *Ex parte Shumake*, 953 S.W.2d 842, 846–47 (Tex. App.—Austin 1997, no pet.); *Clark v. Barr*, 827 S.W.2d 556, 557 (Tex. App.—Houston [1st Dist.] 1992, orig. proceeding) (op. on reh'g). The parties have not raised a question concerning our jurisdiction in this appeal. We decline to depart from our previous cases in which we stated or assumed that we had jurisdiction in an appeal similar to this one. *See, e.g.*, *Ex parte Brooks*, 376 S.W.3d 222, 223 (Tex. App.—Fort Worth 2012, pet. ref'd); *Bridle v. State*, 16 S.W.3d 906, 907 n.1 (Tex. App.—Fort Worth 2000, no pet.).

[3]*See* Tex. Code Crim. Proc. Ann. art. 17.151, § 1(1) (West Supp. 2012) (stating that a defendant who is detained pending the trial of a felony accusation must be released if the State is not ready for trial within ninety days from the commencement of the detention).

and dismiss appeal numbers 02-13-00151-CR and 02-13-00152-CR as moot. As to appellant's first issue, for the reasons stated below, we conclude that the trial court did not abuse its discretion by refusing to lower the amount of his bond for aggravated assault with a deadly weapon, and we therefore affirm the trial court's order denying a reduction in bail in cause number 02-13-00153-CR.

**Background Facts**

A grand jury indicted appellant for aggravated assault with a deadly weapon—a firearm—in November 2011. Subsequently, a grand jury indicted appellant for two additional charges: deadly conduct (for firing a gun in the direction of four people) and theft of a firearm. Appellant was arrested on all of these charges in September 2011, and he has been continuously confined since then.[4]

Bail was set for the charge of aggravated assault with a deadly weapon at $750,000 and for the remaining two charges at $25,000 each. In May 2012, following a hearing on appellant's motions for reduction of the bonds, the trial court reduced the bonds on appellant's deadly conduct and theft of a firearm charges from $25,000 to $24,000 but denied appellant's request to reduce his $750,000 bond for aggravated assault.

Appellant filed new motions for the trial court to reduce his bonds in March 2013, requesting that the trial court lower his $750,000 bail to no more than

[4]Appellant concedes, however, that the State has not caused delay that has prevented him from having a trial on his charges.

3

$50,000 and his two bonds for $24,000 to no more than $5,000. The trial court heard testimony from appellant and his mother primarily regarding appellant's inability to meet bail, his family ties in Wichita County, his extensive criminal history, and his employment history. Based on the testimony from the hearing, the trial court refused to reduce appellant's bonds, stating, "[A]s to the three indicted cases we've heard testimony on today[,] . . . I find that [appellant] is . . . very much a danger to society and I decline to lower the bonds . . . ." Appellant filed his notice of appeal following the trial court's order, asserting the sole remaining issue that we consider on appeal: whether the trial court abused its discretion by twice denying his request for a reduction of the $750,000 bond in the aggravated assault case.

## The Trial Court's Denial of Appellant's Motions to Reduce Bail

We review a trial court's ruling on the setting of bail for an abuse of discretion. *See* Tex. Code Crim. Proc. Ann. art. 17.15 (West 2005); *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. [Panel Op.] 1981); *see also Ex parte Overstreet*, No. 02-08-00404-CR, 2009 WL 2196133, at *1 (Tex. App.—Fort Worth July 23, 2009, no pet.) (mem. op., not designated for publication). A trial court abuses its discretion if it acts without reference to any guiding rules or principles, or in other words, if the trial court acts arbitrarily or unreasonably. *Ex parte Hunt*, 138 S.W.3d 503, 505 (Tex. App.—Fort Worth 2004, pets. ref'd). When determining whether the trial court abused its discretion, we do not substitute our judgment for that of the trial court. *See Montgomery v. State*, 810

4

S.W.2d 372, 380 (Tex. Crim. App. 1990) (explaining that judicial rulings that are subject to an abuse of discretion review "will be affirmed if the trial court follows the appropriate analysis and balancing factors, though the appellate court might disagree with the weight given to those individual factors"). An abuse of discretion occurs when a trial court's decision lies outside the zone of reasonable agreement. *Sandone v. State*, 394 S.W.3d 788, 791 (Tex. App.—Fort Worth 2013, no pet.).

The primary purpose of an appearance bond is to secure the presence of the defendant at trial on the offense charged. *Ex parte Scott*, 122 S.W.3d 866, 868 (Tex. App.—Fort Worth 2003, no pet.) (citing *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977)). Federal and state law both prohibit the imposition of excessive bail. U.S. Const. amend. VIII; Tex. Const. art. I, § 13. Bail should be set high enough to give reasonable assurance that the defendant will appear at trial, but it should not operate as an instrument of oppression. Tex. Code Crim. Proc. Ann. art. 17.15(1)–(2); *Vasquez*, 558 S.W.2d at 479. The defendant bears the burden of proving that the bail, as set, is excessive. *Scott*, 122 S.W.3d at 868–69 (citing *Rubac*, 611 S.W.2d at 849).

Statutory and common law factors guide a trial court's determination of appropriate bail. The code of criminal procedure provides,

> The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:

5

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15. The court of criminal appeals has provided further guidance regarding the determination of appropriate bail by instructing courts also to consider the length of the potential sentence; the nature of the offense; the defendant's work record, family ties, and length of residency; the defendant's prior criminal record; the defendant's conformity with previous bond conditions; other outstanding bonds; and aggravating factors involved in the offense. *Rubac*, 611 S.W.2d at 849–50.

The first two statutory factors for determining bail represent the balance for which a trial court must strive when determining reasonable bail. Essentially, when setting bail, a trial court must weigh the State's interest in assuring the defendant's appearance at trial against the defendant's presumption of innocence. *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref'd); *see also Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. [Panel Op.] 1980) ("Although the bail should be high enough to give reasonable

assurance that the undertaking will be complied with, the amount should not be oppressively high."). A bond may be deemed oppressive when the trial court sets the bail at an amount "for the express purpose of forcing [a defendant] to remain incarcerated." *Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.).

Here, appellant premises his contention that the $750,000 bail in his aggravated assault case is oppressive on its face upon comparison to capital cases in which the court of criminal appeals has reduced the bond. We note, however, as our sister court has before us, that prior decisions are of "relatively little value in addressing the ultimate question of the appropriate amount of bail" in a specific case because appellate decisions on bail matters are often brief and avoid extended discussions, and because the cases are so individualized that generalization from results reached in others is difficult. *Beard*, 92 S.W.3d at 571. In other words, determining reasonable bail necessitates the weighing of many, often contravening, factors that are unique to the facts of a specific case. *See id.*; *see also* Tex. Code Crim. Proc. Ann. art. 17.15. In some cases, certain factors weigh more heavily than others, and an appellant cannot support a plea for a reduction in bail simply by referring to cases in which bail has been reduced in the absence of a relative nexus of similar facts between the cases cited and the case at hand. *See Ex parte Pemberton*, 577 S.W.2d 266, 267 (Tex. Crim. App. [Panel Op.] 1979) (noting that there is no "precise standard for reviewing bond settings on appeal").

We find significant factual differences between this appeal and the cases that appellant cites in support of his proposition that his bail should be reduced simply because the crime for which he has been charged is not a capital offense yet his bail exceeds the bail set for defendants charged with capital offenses. For instance, appellant notes that in *Ludwig v. State*, the court of criminal appeals reduced a $1,000,000 capital murder bond to $50,000. 812 S.W.2d 323, 325 (Tex. Crim. App. 1991). But the underlying factual circumstances in *Ludwig* differ significantly from the facts before us on appeal. The defendant in *Ludwig*, despite his alleged threats to the victim and victim's family, owned real property within Texas, was educated, practiced as a licensed veterinarian in Texas, had no prior criminal record, and was involved in a child custody proceeding that would "require his presence in the jurisdiction." *Id.* at 324. Here, appellant owns no real property within Texas, has presented no evidence regarding education as it pertains to the likelihood of gainful employment, has presented no more than allusions to possible employment with his stepfather whereby he would earn roughly $1,000 per month or potential employment working on an oil rig with his brother,[5] and, as explained below, has a significant criminal history involving violent crimes.

Appellant relies on another capital murder case in which the court of criminal appeals reduced the defendant's bail from $100,000 to $20,000.

---

[5]Appellant conceded that he was not employed in the three months preceding his arrest.

*Vasquez*, 558 S.W.2d at 480. In *Vasquez*, however, although the defendant was charged with capital murder, there was no evidence indicating that the defendant had a prior criminal record. *Id.* at 479. Furthermore, even though the defendant was charged for capital murder, the court noted that he most likely had not physically committed the murder; rather, the court relied on the defendant's testimony that he had driven the principal actor to the store, had no knowledge that the principal actor would commit murder or even that the principal actor had a gun, and then had driven away before the principal actor committed the murder. *Id.* at 480. Here, appellant has a substantial history of violent crimes, including a prior conviction of aggravated assault and an adjudicated juvenile charge of aggravated robbery, and there is no dispute that appellant is alleged to be the exclusive actor in the commission of the instant aggravated assault.

Lastly, appellant notes a case in which the court of criminal appeals reversed a denial of bail and set bail at $25,000 for a capital murder charge. *Ex parte Green*, 553 S.W.2d 382, 383 (Tex. Crim. App. 1977). This case is not relevant to the appeal before us, however, because it concerns the reversal of a denial of bail based upon the evidentiary grounds on which the trial court relied in initially denying bail. *Id.* at 382–83. The court of criminal appeals's opinion in *Green* offers little to no discussion regarding any of the statutory or common law considerations for determining appropriate bail beyond testimony that the appellant owned no house or car and that the appellant's family would attempt to post bond for $10,000; the court in *Green* did not apply these facts to the factors

in the code of criminal procedure, nor did it provide guidance by discussing how these facts influenced its decision to set bail at $25,000. *Id.*; *see* Tex. Code Crim. Proc. Ann. art. 17.15.

On the other hand, there are a number of cases that suggest that $750,000 bail is not outlandish or inherently oppressive for a first-degree felony under certain circumstances. For instance, one of our sister courts held that a $500,000 bond for aggravated assault was not oppressive when the defendant had threatened people at gunpoint and posed a flight risk. *Wright v. State*, 976 S.W.2d 815, 820–21 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

In another Houston case, the appellate court held that a bail of $500,000 was appropriate for a nonviolent first-degree felony charge of trafficking controlled substances. *Brown v. State*, 11 S.W.3d 501, 504 (Tex. App.—Houston [14th Dist.] 2000, no pet.). In *Brown*, the defendant had a prior criminal record, albeit one that consisted of nonviolent felonies, demonstrated strong communities ties, indicated his inability to post bond, and had made his court appearances for his past charges. *Id.* Even so, the court held that the $500,000 bail was appropriate based on the defendant's past charges of trafficking controlled substances and alleged attempt to avoid arrest. *Id.*

Additionally, our sister court in Eastland affirmed a $1,000,000 bail for a charge of organized criminal activity to commit theft. *Ex parte Cuevas*, No. 11-03-00402-CR, 2004 WL 527960, at *1 (Tex. App.—Eastland March 18, 2004, no pet.) (not designated for publication). In *Cuevas*, the defendant had

10

demonstrated decently strong ties to the community, but the court nevertheless affirmed the $1,000,000 bond for the nonviolent crime of stealing tractors in part because of the defendant's criminal history, which indicated that he had been involved with organized theft for over two years. *Id.* at *4–5.

Accordingly, given the significant distinctions between the cases appellant presents and the facts before us on appeal, and given the case law suggesting that a $750,000 bond for a violent first-degree felony is not so extreme as to be oppressive on its face, we find that the trial court did not impose bail for use as an instrument of oppression.

Next, the nature of the offense and the circumstances surrounding the offense are primary factors in determining what constitutes a reasonable bond. Tex. Code Crim. Proc. Ann. art. 17.15(3); *Scott*, 122 S.W.3d at 869. When considering the nature of the offense, we also consider the possible punishment for the charged offense. *Scott*, 122 S.W.3d at 869. When the nature of the offense potentially merits a lengthy prison sentence upon conviction, the pretrial bond must be sufficiently high so as to secure the presence of the accused because the accused's reaction to the prospect of a long sentence may be to not appear. *Id.*

Here, appellant faces a charge of aggravated assault with a deadly weapon, which, as charged in the indictment, is a second-degree felony. Tex. Penal Code Ann. § 22.02(a)(2), (b) (West 2011). Appellant's indictment includes an allegation that he has been previously convicted of a felony (aggravated

11

assault in 2005). As appellant recognized in the trial court, if he is convicted and if the factfinder determines that the enhancement paragraph in the indictment is true, he could serve between five years and life in prison. *Id.* § 12.32(a) (West 2011), § 12.42(b) (West Supp. 2012).

Also, even though the record from the hearings on appellant's motions to reduce bail does not develop the circumstances surrounding the offense in detail, aggravated assault with a deadly weapon, by its very nature, is a violent crime. *See Arebalo v. State*, 143 S.W.3d 402, 410 (Tex. App.—Austin 2004, pet. ref'd). Appellant's indictment for aggravated assault further alleges that appellant caused bodily injury by shooting the victim of his assault with a firearm. Given the serious nature of the charged offense of aggravated assault, especially alleging the use of a deadly weapon or firearm during the commission of the assault, and the potential for a substantial prison sentence, we conclude that this criterion supports the trial court's decision to set bail at $750,000. *See Rubac*, 611 S.W.2d at 849–50 (holding that courts may consider aggravating factors of the charged crime, such as use of a deadly weapon, when determining reasonable bail).

The trial court may also consider the ability of an accused to secure a bond as one of the factors in determining appropriate bail; however, this factor is not dispositive. Tex. Code Crim. Proc. Ann. art. 17.15(4); *Ex parte Brown*, 959 S.W.2d 369, 372 (Tex. App.—Fort Worth 1998, no pet.). A defendant's inability to meet the bond set by the trial court does not singularly render the bail

12

excessive.  *Scott*, 122 S.W.3d at 870 ("If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be.") (quoting *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd)); *see also Wright*, 976 S.W.2d at 820 (holding that bail was not excessive even when no bond companies in the county were able or willing to write a bond for the amount set by the trial court).

The majority of appellant's argument that the trial court imposed excessive bail stems from his assertion that neither he nor his family has adequate resources to post bail.  Both appellant and his mother testified at the hearing regarding his family's inability to post bail.  Appellant testified that a bond company would require a $75,000 or $85,000 premium to write a bond for appellant's $750,000 bail and that he had no property to sell to raise money for the purpose of posting bail.  Appellant further testified that he did not believe that his family could raise enough money to post bail; specifically, his mother did not work, and his family likely could raise only $1,000 or $2,000.  Appellant's mother indicated that she would not be able to meet the premium for the $750,000 bond either but that she potentially could raise three, four, or five thousand dollars to post a reduced bail.  Appellant testified that he did not have a bank account, credit cards, land that he could mortgage, or cars.  Although he testified at one point that he owned some jewelry, he implied that selling the jewelry would allow

13

him to make a bond of only $25,000 to $40,000.[6]  Appellant testified that there was "[n]o way" that his family could raise a sufficient amount of money to pay a bond company enough to post the $750,000 bond.

However, appellant testified that his father owns rental houses, and he did not testify about the value of the rental houses or whether his father would be willing to sell or mortgage the houses to obtain money to pay appellant's bail. And appellant's mother did not testify concerning her family's *specific* assets and financial resources or explain in detail what efforts were being made to garner money to furnish the bond.  *See Scott*, 122 S.W.3d at 870 (explaining that "vague references to [a defendant's] inability to make bond" do not fulfill a defendant's burden of proof in a proceeding for reduction of bail).  Given the vagueness of some of the testimony that appellant and his mother offered to support the claim that appellant could not post bail, we conclude that he failed to satisfy his burden of establishing that neither he nor his family could post bail; therefore, the trial court did not abuse its discretion by refusing to reduce appellant's bail based on this factor alone.

A court may also consider the future safety of the victim of the offense and the community at large when determining appropriate bail.  Tex. Code Crim. Proc. Ann. art. 17.15(5).  The trial court predicated its decision not to reduce appellant's bail predominantly upon this factor.  Specifically, the trial court found

---

[6]Appellant later testified that he did not own any jewelry.

that appellant was "very much a danger to society." In addition to the nature and circumstances of the instant charge of aggravated assault, the trial court heard and considered evidence regarding appellant's substantial criminal history—the majority of which consists of violent crimes involving firearms. Not only had appellant previously been charged as a juvenile with aggravated robbery and theft of a firearm, but he had also been convicted as an adult of aggravated assault with a gun, robbery, criminal trespass, and possession of marijuana. Moreover, in addition to the instant charge of aggravated assault with a deadly weapon, appellant also faces concurrent charges of deadly conduct and theft of a firearm. Specifically, the indictment for the charge of deadly conduct indicates that appellant fired a firearm in the direction of four individuals, and at a hearing on appellant's motions, his mother confirmed that he was being charged with firing a gun into a vehicle near a house where the mother of his children was located.

In sum, appellant's criminal history is replete with violent crimes involving firearms, most notably a past conviction of aggravated assault that involved the use of a gun. Moreover, appellant currently faces concomitant charges for which he is alleged to have fired a firearm at a total of five people. Given appellant's substantial criminal record, which dates back to appellant's adolescence and suggests a sustained and recurring propensity for violent crimes and the illegal use of firearms, we determine that the trial court did not abuse its discretion by

15

relying foremost upon its finding that appellant was a danger to the community when determining reasonable bail for appellant's aggravated assault charge.

A court may also consider additional factors, such as a defendant's community ties, length of residency, work history, and prior conformity with bail conditions when determining reasonable bail. *Rubac*, 611 S.W.2d at 849–50. Appellant and his mother both testified regarding his significant family ties in Wichita County. Appellant, who was twenty-seven years old at the time of the trial court's hearing on his motions to reduce his bonds, stated that his two children, one of his brothers, his two sisters, his three aunts, his mother and stepfather, and numerous cousins lived in Wichita County, and he also stated that he had lived in Wichita County for most of his life. Appellant's mother corroborated this testimony and also elaborated further, stating that appellant had a good relationship with family—his three aunts in particular—and that she would house appellant and ensure his compliance with any conditions the trial court imposed upon a reduced bail.[7]

Furthermore, appellant testified that he would be able to work for his stepfather maintaining his family's rental properties if he were released. Appellant further testified that he potentially could work with his brother on an oil rig; however, this testimony was unsubstantiated by his brother, and appellant presented no evidence regarding the potential income the job would yield.

---

[7]Outside of his family, appellant described his ties to Wichita Falls as only that he played sports and helped out with his nephew's basketball team.

16

Beyond these two statements, appellant did not establish that he would find gainful employment if released on a reduced bail. *Cf. id.* (emphasizing a defendant's Ph.D. in chemical engineering when weighing and considering the defendant's prospects for potential gainful employment as a factor for reducing bail).

Lastly, appellant testified, and the State does not contest, that appellant had fully complied with the conditions of a previous bail and a "furlough" related to his previous felony case. Specifically, appellant testified that he conformed to the conditions of a bond posted in 2010 and had appeared at court pursuant to the bond, even though the charge was eventually dismissed. The State, however, highlights that appellant failed to appear in court for a traffic ticket that he received in Oklahoma, that a warrant issued for his arrest in 2009, and that the warrant was still outstanding as of April 2013. Appellant attempts to ameliorate this warrant in his brief by suggesting that paying a simple fine would cure the warrant; however, the core consideration remains that appellant failed to make his appearance, whether in person or by paying the fine.

In sum, these remaining countervailing factors both support and weigh against the trial court's decision to set bail at $750,000. It is within the trial court's discretion, however, to examine these criteria and factor them into the formula for setting bail as the trial court deems fit; certainly no one of these factors standing alone, such as appellant's strong ties to his family, independently merits a reduction of bail when considered conjunctively with other

17

factors, such as appellant's history with violent crimes. *See Montgomery*, 810 S.W.2d at 379–80; *see also Brown*, 11 S.W.3d at 503 ("Appellant made a strong showing that he has substantial ties to the community . . . . Community ties and length of residency, however, are not the only factors we consider in our review.").

After considering each of the statutory and common law factors relevant to the determination of reasonable bail, we conclude that the trial court did not abuse its discretion by setting bail at $750,000 because it referenced guiding principles in deciding this amount, and this amount lies within a zone of reasonable disagreement in light of the evidence within the record. *See Montgomery*, 810 S.W.2d at 391; *see also Ex parte Pharris*, 402 S.W.3d 350, 352–55 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (upholding a bond of $600,000 when the defendant had four previous convictions and the evidence established a concern about the safety of the community); *Ex parte Leonard*, No. 05-12-00401-CR, 2012 WL 4497654, at *1–4 (Tex. App.—Dallas Oct. 1, 2012, no pet.) (mem. op., not designated for publication) (upholding a bond of $500,000 when appellant had a lengthy and violent criminal history). We overrule appellant's first issue.

## Conclusion

Having overruled appellant's issues, we dismiss appellant's appeals in cause numbers 02-13-00151-CR and 02-13-00152-CR as moot, and we affirm the trial court's order denying appellant's motion to reduce bail in cause number 02-13-00153-CR.

PER CURIAM

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  September 26, 2013