

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00025-CR

_____

Ex parte Adan Chavez

On Appeal from the 89th District Court
Wichita County, Texas
Trial Court No. DC89-CV2023-2307

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

In this appeal from the denial of a pretrial application for habeas relief, Appellant Adan Chavez challenges the trial court's denial of his request to lower the bail amounts for his pending murder and deadly-conduct charges, set at $275,000 and $25,000, respectively.

Chavez has complained before to this court that the bail amount on his murder charge—previously set by the trial court at $1,000,000—was excessive. *See Chavez v. State*, 671 S.W.3d 775, 779 (Tex. App.—Fort Worth 2023, no pet.). We agreed with Chavez, reversed the trial court's denial of his bail-reduction request, and remanded the case for the trial court to set a reasonable bail. *Id.* at 791.

On remand, Chavez agreed to have his bail set at $275,000 on the murder charge. His deadly-conduct bail amount remained unchanged at $25,000. Chavez then filed another habeas petition to further reduce his bail amounts so that they totaled no more than $200,000 together. After a bail-reduction hearing, the trial court denied him his requested habeas relief. Chavez appeals this denial. We will affirm.

## I. BACKGROUND

Chavez is accused of shooting and killing Jorge Gonzalez in a convenience store parking lot in October 2022, using a high-caliber, high-capacity, semi-automatic rifle.[1] The State has also alleged that, prior to Gonzalez's killing, Chavez had used the

---

[1]The medical-examiner's report admitted at the bail-reduction hearing showed that Gonzalez had suffered eight gunshot wounds to his head, torso, and arm.

same weapon to shoot at the outside of Gonzalez's home. We refer the reader to the background section of our previous opinion for a more in-depth discussion of the facts that precipitated Chavez's being charged with murder and deadly conduct. *See id.* at 779–81. Here, we will concentrate on the facts relevant to our current determination—chiefly, the evidence adduced at the instant bail-reduction hearing.[2]

Chavez testified that after this court remanded the case on the issue of his $1,000,000 murder-charge bail, he agreed to have that amount reduced to $275,000, making his total bail on both charges $300,000. He said that a bond company had requested a $12,000 down payment and $400 per week to cover this new bail amount. According to Chavez, this amount was still too high, as he and his family could only afford about $8,000 in total—"the same as last time."[3] Chavez testified, if released from jail, that he could earn up to $1,200 per week as a roofer. Chavez testified that he had no money or other assets that he could use to pay for his bail.

Obtaining release was important to Chavez because he desired to work and support his three small children. His mother, five sisters, and five cousins all live in the area and have said that they would help to ensure that Chavez meets the

---

[2]This evidence includes Chavez's testimony and sixteen exhibits admitted by the State, which include probable-cause affidavits, medical-examiner reports, documents related to a pending federal charge against Chavez, and incident reports from the jail. Chavez was the only witness at the hearing.

[3]At the previous bail-reduction hearing, Chavez's mother testified that the most that she and the rest of Chavez's family could afford to pay a bail bondsman was $8,000. *See Chavez,* 671 S.W.3d at 780.

conditions of his bond. Chavez assured the trial court that he would follow all bond requirements, would have no contact with Gonzalez's family, and that he did not own any firearms.

On cross-examination, Chavez explained that he had a prior conviction for misdemeanor assault of a family member. When asked if the bonding company in that case had gone "off [his] bond," Chavez replied that he could not remember but would not be surprised if that had occurred. The State then entered into evidence an affidavit from Chavez's former bonding agent who attested that Chavez had failed to comply with their bond agreement and who had requested that a warrant be issued for his arrest. Chavez then testified that he had a pending federal charge for "smuggling a human[:] . . . [i]llegal aliens."[4] He conceded that he had violated his bond in the federal case by failing to report a change of address and that a warrant was outstanding for his arrest.

Chavez also testified about multiple write-ups that he had received for violating jail rules. These incidents, detailed in exhibits entered by the State, included infractions for throwing a chess piece at a jail officer, unauthorized use of another inmate's information to access a tablet, destruction of jail property for breaking his inmate ID card, and refusing to comply with jail-staff directives.

---

[4]Hearing exhibits related to this charge show that Chavez was indicted in July 2021 for transportation of aliens within the United States. *See* 8 U.S.C.A. § 1324(a)(1)(A)(ii), (B)(ii).

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review the trial court's decision in setting a bail amount for an abuse of discretion, viewing the evidence in the light most favorable to the trial court's ruling. *Ex parte Gomez*, 624 S.W.3d 573, 576 (Tex. Crim. App. 2021). We will not disturb the decision if it was within the zone of reasonable disagreement. *Ex parte Estrada*, 640 S.W.3d 246, 256 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd). The accused has the burden to show that the bail amount is excessive. *Gomez*, 624 S.W.3d at 576.

Bail's primary purpose is to assure the defendant's presence for trial. *See* Tex. Code Crim. Proc. Ann. art. 17.01; *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). In setting bail, the trial court balances the defendant's presumption of innocence and the State's interest in assuring the defendant's presence at trial. *See Ex parte Simpson*, 77 S.W.3d 894, 896 (Tex. App.—Tyler 2002, no pet.) (per curiam); *Ex parte Brown*, 959 S.W.2d 369, 371 (Tex. App.—Fort Worth 1998, no pet.).

The trial court's discretion in setting a bail amount is governed by the following statutory criteria:

> 1. Bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be used to make bail an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered, including whether the offense: (A) is an offense involving violence as defined by Texas Code of Criminal Procedure Article 17.03; or (B) involves violence directed against a peace officer.

4. The ability to make bail shall be considered, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6. The criminal history record information for the defendant, including information obtained through the statewide telecommunications system maintained by the Department of Public Safety and through the public safety report system developed under Article 17.021, shall be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

7. The citizenship status of the defendant shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15(a). Other circumstances to be considered include the defendant's work record, family and community ties, length of residency, and conformity with the conditions of any previous bond, as well as the existence of any outstanding bonds and aggravating circumstances involved in the charged offense. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981).

A defendant's inability to meet the bail set by the trial court does not automatically make the bail amount excessive; "[i]f the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be." *Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App.—Fort Worth 2003, no pet.) (quoting *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd)); *see Estrada*, 640 S.W.3d at 255 (stating that evidence of "enormous gap" between what bail appellant's family said they could afford and what

6

bail the court set favored reduction in bail but did not demonstrate that the bail was excessive). However, as noted, "[t]he power to require bail is not to be used to make bail an instrument of oppression." Tex. Code Crim. Proc. Ann. art. 17.15.

A defendant's criminal history can in some cases suggest that the defendant would be a danger to the public if released on bail. *See, e.g., Ex parte Lovell*, No. 12-21-00206-CR, 2022 WL 598683, at *3 (Tex. App.—Tyler Feb. 28, 2022, no pet.) (mem. op, not designated for publication). But the nature of the offense with which the defendant is currently charged and the possible sentence are the "primary factors" we consider in evaluating a bail decision. *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pets. ref'd).

## III. DISCUSSION

### A. CHAVEZ'S BAIL AMOUNTS NOT EXCESSIVE

As we explain below, Chavez has not carried his burden to prove that his bail amounts are excessive.

### 1. Nature of the Offense and Potential Sentence

Chavez is charged with murder and deadly conduct. *See* Tex. Penal Code Ann. §§ 19.02(b) (murder), 22.05(b) (deadly conduct). Murder is a first-degree felony that carries a potential sentence of imprisonment for 5 to 99 years or life. *Id.* §§ 12.32(a), 19.02(c). Murder is also "an offense involving violence as defined by Texas Code of Criminal Procedure Article 17.03"—a fact that courts are to consider when making bail determinations. Tex. Code Crim. Proc. Ann. arts. 17.03(b-3)(2), 17.15(a)(3)(A).

7

Deadly conduct as charged against Chavez is a third-degree felony that carries a potential sentence of imprisonment between 2 and 10 years. Tex. Penal Code Ann. §§ 12.34(a), 22.05(e).

There is no doubt that the alleged offenses were grave and violent. Chavez is alleged to have used a high-caliber, high-capacity rifle to shoot the victim's house and then to have used that same weapon in a public setting to shoot the victim eight times, killing him. And the potential for a life sentence amplifies the importance of setting the bail amount sufficiently high to secure Chavez's appearance at trial. *See id.* art. 17.15(1); *Scott*, 122 S.W.3d at 869 (recognizing that the prospect of a lengthy prison sentence might lead a defendant to not appear at trial).

These factors weigh strongly in favor of a reasonably high bail amount.

### 2. Ability to Make Bail

Chavez testified that his bail amounts are still too high for him and his family to afford, even after they were reduced—by agreement—from $1,025,000 in total to $300,000. He said that a bonding company was seeking a $12,000 down payment but that he and his family could come up with only $8,000.

In our 2023 opinion, we held that Chavez had "offered evidence that there was an 'enormous gap between what bail . . . he could afford and what bail the trial court actually set.'" *Chavez*, 671 S.W.3d at 790 (cleaned up) (quoting *Estrada*, 640 S.W.3d at 255). At that time, Chavez's mother testified that the family could afford to pay only $8,000 to a bondsman but that Chavez's $1,000,000 murder bail alone would have

8

required them to pay $100,000. There is little question that $92,000 is an enormous gap.

But the situation has changed for Chavez. Knowing how much he and his family could afford to pay a bondsman, he agreed to lower his total bail amount to $300,000. And the difference between what they can afford—$8,000—and the down-payment amount now needed for the bondsman—$12,000—does not constitute an enormous gap. At best, in light of these new facts, Chavez's stated inability to make bail weighs only nominally in favor of a reduced bail amount.

### 3. Future Safety of Victim, Law Enforcement, and Community

Chavez testified that he did not own any firearms and that, if released, he would have no contact with the victim's family. No evidence was adduced at the hearing to show a particular threat to the victim's family or law enforcement if Chavez was released.

However, the nature of Chavez's violent offenses committed in public settings raises a generalized concern for the community's safety. *See Ex parte Hanson*, No. 02-22-00045-CR, 2022 WL 1496533, at *4 (Tex. App.—Fort Worth May 12, 2022, no pet.) (mem. op., not designated for publication) (noting that a murder charge raises a generalized safety concern).

Thus, on this record, this factor does not weigh substantially for or against a high bail amount.

### 4. Criminal History and Bail Compliance

The evidence showed that Chavez has a prior conviction for misdemeanor assault of a family member and a pending federal charge for transportation of illegal aliens and that he had violated his bond in both of those cases. It also indicated that Chavez had violated jail rules several times, including by throwing an object at a jail staffer.

This factor weighs in favor of a high bail amount, particularly one high enough to ensure Chavez's appearance at trial given that he has shown an inability to comply with bond conditions in the past.

### 5. Ties to the Community And Citizenship

Chavez has strong ties to the community. He has many family members in the area, including his mother, five sisters, numerous cousins, and three small children. In our previous opinion, we noted that Chavez is a United States citizen who was born in Texas and has worked locally since he was a teenager. *See Chavez*, 671 S.W.3d at 789. No evidence was adduced at the hearing to contradict these strong ties or to indicate that Chavez has ties elsewhere that would make him a flight risk.

Accordingly, this factor weighs in favor of a lower bail amount.

### 6. Not Used As Instrument of Oppression

In light of these factors, we conclude that the trial court did not abuse its discretion in denying Chavez's habeas request for reduced bail. The nature of his alleged offenses and possible sentence—which are the "primary" factors we are to

consider—weigh heavily in favor of a reasonably high amount. *See Hunt*, 138 S.W.3d at 506. Additionally, his criminal history, past bond violations, and the recent reduction of his bail to an agreed-upon amount show that his bail is not being used as an instrument of oppression but, rather, to ensure his appearance at trial. *See* Tex. Code Crim. Proc. Ann. art. 17.15(a)(2). And Texas courts considering bail amounts in similar cases have routinely upheld amounts comparable to those in Chavez's case. *See Ex parte Reyes-Martinez*, 653 S.W.3d 273, 283 (Tex. App.—Austin 2022, no pet.) (affirming $50,000 and $300,000 bail amounts for aggravated-assault and felony-murder charges); *Ex parte McBride*, No. 12-07-00241-CR, 2007 WL 4216370, at *2 (Tex. App.—Tyler Nov. 30, 2007, no pet.) (mem. op., not designated for publication) (affirming $250,000 bail amount for murder charge and collecting cases); *Ex parte Landry*, 936 S.W.2d 27, 28 (Tex. App.—San Antonio 1996, no pet.) (affirming $300,000 bail amount for murder charge).

## B. CONSIDERATION OF PUBLIC SAFETY REPORT

### 1. Damon Allen Act and *Gayosso*

Though neither party raised it as an issue with the trial court or on appeal, the Texas Court of Criminal Appeals (CCA) recently explained that it is imperative for an appellate court—in effectuating its duty to consider the complete record on appeal— to determine whether a trial court considered an Article 17.021 public safety report[5] in

---

[5]An Article 17.021 public safety report must contain a number of items for a criminal defendant, including his identifying information; eligibility for a personal

making a bail determination. *See Ex parte Gayosso*, No. PD-0513-23, 2023 WL 8440099, at *2 (Tex. Crim. App. Dec. 6, 2023).

The Damon Allen Act requires that a "magistrate considering the release on bail of a defendant charged with an offense punishable as a Class B misdemeanor" or higher must order the preparation of a public safety report. Tex. Code Crim. Proc. Ann. art. 17.022(a). The magistrate is then required to "consider the public safety report before setting bail." *Id.* art. 17.022(d)(1).

In *Gayosso*, the intermediate appellate court contended that it need not be concerned with whether the Damon Allen Act applied to its case because the record made it clear that the trial court considered the appellant's criminal history and because no argument had been raised on appeal that the trial court had failed to consider the public safety report. 2023 WL 8440099, at *2. The CCA disagreed, explaining that

> an appellate court must consider the complete record that was before the trial court in determining whether the bail determination was an abuse of discretion. If the trial court did not consider the public safety report required by statute, then it erred, though the court of appeals might be able to consider the issues of preservation and harm. If the trial court did consider the public safety report required by statute, it was error for the court of appeals to not review the report.

*Id.*

---

bond; "information regarding the applicability of any required or discretionary bond conditions;" and a summary of his criminal history, which includes previous convictions, pending charges, previous sentences of confinement, notation of certain violent crimes, and previous bond failures. Tex. Code Crim. Proc. Ann. art. 17.021.

12

## 2. Trial Court Erred By Not Considering Report

Because we could not determine from the record whether the trial court had considered the public safety report before setting Chavez's bail, we abated this appeal for the trial court to make findings of fact and conclusions of law on the issue. *See Ex parte Delong*, No. 02-23-00322-CR, 2024 WL 725111, at *1 (Tex. App.—Fort Worth Feb. 22, 2024, no pet. h.) (abating for same reason). Specifically, we asked the trial court to provide findings about (1) whether it had considered the public safety report; (2) if so, whether the report still existed or had been destroyed; (3) if the report had been considered, any information in the report on which the trial court had relied in making its decision; and (4) any other information on which the trial court had relied in making its decision.

The trial court responded to our abatement order, finding that it had not considered a public safety report in determining Chavez's bail. The trial court explained that its determination had been based on

- All testimony and evidence presented at the bail-reduction hearing;

- The trial court's determination that Chavez's testimony was not credible regarding whether he would appear at trial, maintain employment, and follow bail conditions;

- Chavez's criminal history, which included a prior family-violence conviction and "all of the circumstances related to his pending federal charge for smuggling illegal aliens";

- The fact that Chavez had a history of violating prior bond conditions;

- The fact that Chavez had received multiple disciplinary violations while in jail;

- The "violent and dangerous circumstances" of the alleged offenses; and

- The fact that Chavez had "agreed to a cumulative bail of $300,000 for his charges before later deciding to contest the agreed-upon amount."

We hold that it was error for the trial court not to consider the public safety report. However, as we will explain, this error was not preserved for our review and was also harmless. *See Gayosso*, 2023 WL 8440099, at *2 (explaining that appellate court may consider the issues of preservation and harm in reviewing such error); *Delong*, 2024 WL 725111, at *8 (holding that failure to consider report was harmless error).

### 3. Error Not Preserved

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020). Because it is a systemic requirement, this court should independently review error preservation, and we have a duty to ensure that a claim is

14

properly preserved in the trial court before we address its merits. *Dixon*, 595 S.W.3d at 223.

Because Chavez has never complained (in the trial court or on appeal) that the trial court failed to consider a public safety report, we hold that the issue has not been preserved for our review.

### 4. Harmless Error

Even if the error had been preserved and raised on appeal, it would have been harmless to Chavez. In *Delong*, we set forth the applicable harm analysis:

> [W]e disregard the trial court's error if it did not affect [the appellant's] substantial rights. *See* Tex. R. App. P. 44.2(b). Analogizing this situation to one in which the trial court has failed to consider a presentence investigation report in assessing punishment, we will assess the effect that the trial court's error had on its bail decision by considering the entire record, the nature of the evidence supporting the bail decision, the character of the error (i.e., the failure to consider the information in a mandatory report before making a bail decision), and how the error might be considered in connection with other evidence in the case. *See Yarbrough v. State*, 57 S.W.3d 611, 619 (Tex. App.—Texarkana 2001, pet. ref'd); *see also Bates*[ *v. State*], [No. 02-20-00114-CR,] 2021 WL 1229962, at *3 [(Tex. App.—Fort Worth Apr. 1, 2021, no pet.) (mem. op., not designated for publication)].

*Delong*, 2024 WL 725111, at *8.

We have already discussed in detail the evidence before the trial court at the bail-reduction hearing and why that evidence supported its decision. The trial court had Chavez's identifying information even without the public safety report. The report would have stated to the trial court whether Chavez was eligible for a personal bond, but there was no dispute as to Chavez's bond eligibility. If Chavez had been

15

ineligible for some reason, that information would have only harmed him. We know that the trial court considered Chavez's criminal history and prior bond failures; the omission from the record of additional criminal history or bond failures that might have appeared in the report would only have benefitted him.

In other words, the trial court had from other sources most of the information that would have appeared in the public safety report. And if there was any information missing from the trial court's consideration that would have appeared in the report, Chavez stood only to benefit from those omissions. *See id.* Accordingly, we hold that—even if Chavez had properly preserved the error or if it was not required to have been preserved—the trial court's failure to consider the public safety report did not affect Chavez's substantial rights. *See id.*

## IV. CONCLUSION

For these reasons, we affirm the trial court's order denying Chavez's requested habeas relief.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 21, 2024

16